



# OPINION

Nos. 04-11-00871-CV & 04-11-00872-CV

**CITY OF SAN ANTONIO**,
Appellant

v.

**THE ROGERS SHAVANO RANCH, LTD.**,
Rogers 1604 Commercial, Ltd., Bitterblue, Inc., Denton Development Corporation,
Rogers Shavano Ranch No. 3, Ltd., and MH-II Ltd.,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CI-14306
Honorable John D. Gabriel, Jr., Judge Presiding[1]

**OPINION ON APPELLANT'S MOTION FOR REHEARING**

Opinion by:    Phylis J. Speedlin, Justice

Sitting:    Catherine Stone, Chief Justice
    Karen Angelini, Justice
    Phylis J. Speedlin, Justice

Delivered and Filed:  August 29, 2012

AFFIRMED

---

[1] The Honorable John D. Gabriel, Jr. is the presiding judge of the 131st Judicial District Court, Bexar County, Texas, and signed the order denying the City's plea to the jurisdiction based on standing. The Honorable David A. Berchelmann, Jr., presiding judge of the 37th Judicial District Court, Bexar County, Texas, signed the order denying the City's plea to the jurisdiction based on failure to exhaust administrative remedies.

The motion for rehearing filed by appellant City of San Antonio is denied. This court's opinion and judgment dated July 5, 2012 are withdrawn, and this opinion and judgment are substituted to clarify a statement in the opinion.

The City of San Antonio appeals the trial court's denial of its pleas to the jurisdiction in this lawsuit by the Rogers Ranch property owners and developers seeking a declaratory judgment recognizing the development project's vested rights under Chapter 245 of the Texas Local Government Code. TEX. LOC. GOV'T CODE ANN. §§ 245.001-.007 (West 2005). The issues in this interlocutory appeal are limited to jurisdiction, and specifically involve (i) whether the Plaintiffs/Appellees have standing to seek recognition of the project's claimed vested rights, and (ii) whether the Plaintiffs/Appellees were required to, and failed to, exhaust administrative remedies with respect to the claimed vested rights.

### FACTUAL AND PROCEDURAL BACKGROUND

In 1993, the 1780-acre tract of property at the corner of Loop 1604 and N.W. Military Highway now known as Rogers Ranch (the "Subject Property") was owned by the Rogers family. The Rogers family agreed with developers Bitterblue, Inc. and Denton Development Corporation on a plan to develop the Subject Property for single family residential and commercial use; the proposed development became known as the Rogers Ranch Development (the "Project"). Subsequently, parts of the undeveloped portions of the Subject Property were conveyed to other entities, and the developed portions were sold to residential homeowners and commercial end-users. Approximately 200 acres remain undeveloped.

*Water Service*. In July 1993, Gene Dawson, Jr. of Pape-Dawson Consulting Engineers, Inc., representing the owners and developers of the Subject Property, sent a letter to the San Antonio Water System ("SAWS") requesting an extension of a previous water commitment with

SAWS which had expired.  A "Preliminary Engineering Report on the Feasibility of [SAWS] Providing Water Service to 1,780-Acre Tract at Loop 1604 and Military Highway" was issued by SAWS on August 3, 1993 (the "Water Report/Commitment").  The Water Report/Commitment stated that SAWS "can provide water service to the 1,780-acre tract," and further stated "[s]uch a water service commitment" will require the "applicant" to provide funding and meet other requirements; the report recommended that "this commitment for water service" be honored during negotiations with the developer for the donation of a reservoir site.  On August 10, 1993, SAWS sent a letter to Pape-Dawson stating that the SAWS Board of Trustees had approved extension of water service to the 1780-acre tract based on the recommendations in the Engineering Report, and reiterating the requirements to be met by "the developer" for "this water service commitment."  Finally, in a letter dated September 29, 1999 addressed to Denton Development Corporation, SAWS acknowledged the specific requirements of the Water Commitment that had been met by the developer to date, and outlined the status of future activities "related to the fulfillment of the water service commitment" "as development progresses."  The letter recites that the SAWS Board of Trustees "authorized the provision of water service to Rogers Ranch on August 3, 1993."

*Sewer Service*.    On July 25, 1994, Pape-Dawson submitted its "Rogers Ranch Development Sewer Report" to SAWS (the "Sewer Report"), and requested that SAWS approve the report's plan for providing sewer service to the development.    The Sewer Report characterizes its purpose as "to establish a plan for providing sanitary sewer service to the Rogers Ranch Development" so that a sewer service contract could be approved by the City Council.  A sewer service contract based on the Sewer Report was approved by the SAWS Board of Trustees on March 12, 1996 (the "Sewer Contract").  The Sewer Contract was entered into

between SAWS and Bitterblue, Inc. as the developer for the Rogers Ranch Development, and provides for the extension of sewer service to the 1696-acre tract.[2]

***Application for Recognition of Vested Rights***.    In December 2005, the Appellees, through Brown, P.C. law firm, filed an application requesting the City to recognize the Project's vested rights as of March 12, 1996 based on the Sewer Contract with SAWS; the application listed the Project's acreage as 1,696 acres, which matches the acreage stated in the Sewer Contract.  The vested rights application was denied by the City's Director of Planning and Development Services in January 2006.  The Appellees appealed the decision to the City Planning Commission pursuant to section 35-712(d) of the City's Unified Development Code. On May 10, 2006, the day the Planning Commission was to hear the appeal, the Appellees amended and resubmitted their application with the following changes: (i) amended the acreage to 1780 acres, and (ii) amended the basis for the claim of vested rights to the Water Report/Commitment approved by SAWS on August 3, 1993, asserting that, as an agreement for construction, it was the first "permit" for the Project.  The City Planning Commission approved the application for vested rights based on the Water Report/Commitment, and found that the Project had vested rights as of August 10, 1993.[3]  The City Manager subsequently appealed that decision to the City Council, which sustained the City's appeal and denied the Rogers Ranch application for vested rights based on the Water Report/Commitment.

***Lawsuit to Enforce Vested Rights***.    In September 2006, the Appellees filed a declaratory judgment action seeking a declaration of their "vested statutory rights" under Chapter 245 as it pertains to the Subject Property and/or Project.  The Appellees' live petition alleges that

---

[2] In its reply brief, the City states it is not concerned about the minor discrepancy from the original 1780 acres.

[3] The application asked for vesting on August 3, 1993, the date of the Water Report/Commitment, but the Commission used August 10, 1993 as the vesting date, which was the date of the confirmation letter from SAWS. The Appellees state in their brief that the discrepancy in dates makes no difference.

the designated limited partnerships are "owners" and "part owners" of the Subject Property. The petition further alleges that, at all relevant times, Bitterblue, Inc. has been the "general partner and/or agent of an owner" and the developer and a "permit applicant" for the Subject Property, and that Denton Development Corp. is a developer and "permit applicant" for the Subject Property.

In their live pleading, their Fifth Amended Petition,[4] Appellees seek a declaratory judgment that the "Water Commitment" for the 1780-acre tract, as evidenced by the Engineering Report dated August 3, 1993, is the first permit in a series of permits which vested the rights of the Project; the "Project" is defined in the petition as "the entire 1780 acres which are the subject of this lawsuit, less any properties which have been sold by the Plaintiffs or which are otherwise no longer owned by the Plaintiffs." Appellees allege that the Water Report/Commitment, and related documents discussed above, constitute a "contract or other agreement" with SAWS for water service, and are thus a "permit" within the meaning of Chapter 245 concerning vested rights. *See* TEX. LOC. GOV'T CODE ANN. § 245.001(1) (defining the term "permit"). Alternatively, the Appellees seek a declaratory judgment that the Sewer Report submitted to SAWS on July 25, 1994 constitutes an "application" for a permit under Chapter 245, and is the very latest date for vesting of the Project's rights to be free from subsequent restrictions.

***Plea to the Jurisdiction on Standing***. On November 10, 2011, the City filed a document titled "Special Exceptions, Plea in Abatement or, Alternatively, Plea to the Jurisdiction, and, Subject Thereto, First Amended Original Answer and Affirmative Defenses." The sole basis for the written plea to the jurisdiction was the general statement that, "Plaintiffs

---

[4] The Sixth Amended Petition was filed after the City filed its notices of appeal. The Sixth Amended Petition contains more detail explaining the progression of ownership, but is substantively the same as the Fifth Amended Petition.

simply lack standing to bring such claims [for declaration of vested rights]."[5] At a hearing held on November 18, 2011, the City initially argued that, tied in with its special exceptions, the Appellees no longer own the full 1780 acres because they have sold portions, and for purposes of standing those new homeowners need to be joined in the lawsuit. Instead of joining all the individual homeowners, the Appellees addressed the City's special exceptions by filing a Fourth Amended Petition which defined the "Project" as 1780 acres "less the properties that had been sold."

Specifically with respect to standing, the City's main point was that the Water Report/ Commitment, the "permit" or permit "application" at issue, does not name any of the Plaintiff entities as "owners" of the property, and "vested rights are tied to the owner of the land because the project follows the land;" therefore, none of the Plaintiffs have standing to sue for recognition of vested rights based on the Water Report/Commitment. The City argued, "the parties that are properly before the Court don't own the property, the developers certainly don't own the property, and none of the owners have vested rights because they weren't involved in the platting process for getting the original water commitment or sewer contract." At the hearing, the City conceded, however, that Plaintiff Bitterblue, Inc. does have standing because it is a party to the Sewer Contract with SAWS, which the City stated it is not disputing, and, "[s]o only Bitterblue has vested rights back into the sewer contract . . . ."

Appellees responded that their pleadings[6] assert the Plaintiff entities are owners and part owners of the Subject Property, and that Bitterblue and Denton Development are the developers and permit applicants; therefore, they all have standing to sue for recognition of vested rights.

---

[5] With respect to Plaintiff Denton Development Corporation, the City did allege a specific reason it lacks standing – because it does not own any of the property that is the subject of the lawsuit.

[6] The Fourth Amended Petition was the live pleading at the time of the hearing.

Further, the Appellees' pleadings allege that Bitterblue is either the general partner or agent of all the other Plaintiff entities (except for Denton Development), and the pleadings must be taken as true for purposes of the plea to the jurisdiction. In addition, they cited to the affidavits of William Eugene Powell of Bitterblue and Gene Dawson of Pape-Dawson as support for their allegations. The City contested the fact that Bitterblue is the general partner of all the Plaintiff limited partnerships—specifically as to Rogers Shavano Ranch, Ltd. and MH-II, Development, Limited. Finally, the Appellees asserted that because the vested rights are attached to the Project, the vested rights travel with the property when it is sold as long as the Project has not changed or become dormant.[7] At the conclusion of the hearing, the trial court denied the City's plea to the jurisdiction, stating there were fact questions as to how the Plaintiff entities are related and how that affects their interest with regard to vested rights. The court's general order was signed on November 18, 2011.

*Plea to the Jurisdiction on Exhaustion of Administrative Remedies.* The next week, on November 23, 2011, the City filed a second Plea to the Jurisdiction based on failure to exhaust administrative remedies asserting the Appellees' latest amended petition reduced the acreage for which vested rights are claimed, thereby changing the nature of the request for vested rights.[8] At a hearing on December 2, 2011, evidence was admitted and argument was presented.[9] The City's sole argument was that the Appellees changed their request for vested rights in their Fifth Amended Petition from an "all or nothing" request for the full 1780 acres

---

[7] Whether the Project has changed or become dormant is the main issue on the merits that has yet to be determined by summary judgment or trial.

[8] The City is also raising failure to exhaust administrative remedies as an affirmative defense to the merits of the lawsuit.

[9] The evidence admitted with respect to the City's pleas to the jurisdiction is listed in the "Agreed Order to Reopen Defendant's Plea to the Jurisdiction and Enter Evidence" signed on December 2, 2011. The evidence includes all the documents referenced herein.

defined as the "Subject Property," which was their argument during the City's administrative process, to a "fundamentally different" request for vested rights for the "Project" defined as the 1780 acres "less any property which has been sold . . . or is no longer owned by Plaintiffs." The City asserted that because it never had the opportunity to consider the "less than" 1780 acres request during the administrative process, the Appellees failed to exhaust their administrative remedies, which is a jurisdictional prerequisite to filing suit—the City requested dismissal or abatement of the lawsuit so that Appellees could re-start the administrative process with the new "less than" 1780 definition.

The Appellees responded that the vested rights accrued to the Project, not to the particular acreage or individual property owners. They agreed that they have been developing the Project for several years and have indeed sold portions to consumers. Further, Appellees pointed out that they amended their petition to redefine the "Project" to delete the sold lots specifically to address the City's special exceptions complaining that the Appellees no longer own the full 1780 acres. Appellees argued the City's newly asserted "failure to exhaust administrative remedies" argument is a red herring and delay tactic, having never been previously raised during the five-year pendency of the lawsuit. Finally, the Appellees argued that section 245.006 expressly authorizes the filing of a declaratory judgment suit to enforce vested rights against a governmental agency, and does not reference any requirement to exhaust administrative remedies; they argued in the alternative that they did in fact exhaust the City's administrative process. TEX. LOC. GOV'T CODE ANN. § 245.006. At the conclusion of the hearing, the trial court signed a general order denying the plea to the jurisdiction on failure to exhaust administrative remedies.

The City timely appealed both orders denying its pleas to the jurisdiction on standing and exhaustion of administrative remedies. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2011). The City asserts on appeal that the undisputed jurisdictional facts establish that it is entitled to a dismissal of the lawsuit for lack of jurisdiction under either of its pleas to the jurisdiction.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *Save Our Springs Alliance v. City of Austin*, 149 S.W.3d 674, 680 (Tex. App.—Austin 2004, no pet.). Subject matter jurisdiction is a question of law that we review de novo. *Tex. Dept. of Parks and Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Nat'l Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

When a plea to the jurisdiction challenges the plaintiff's pleadings, the court must determine if, construing the pleadings liberally in the plaintiff's favor, the plaintiff has alleged facts affirmatively demonstrating the trial court's jurisdiction to hear the case. *Miranda*, 133 S.W.3d at 226; *Tex. A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839-40 (Tex. 2007). When a plea to the jurisdiction challenges the existence of jurisdictional facts, the court looks beyond the plaintiff's pleadings and considers the relevant evidence submitted by the parties to resolve the jurisdictional issues. *Miranda*, 133 S.W.3d at 227; *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). If the evidence of jurisdictional facts is undisputed, or fails to raise a fact question on the issue of jurisdiction, the trial court may rule on the plea as a matter of law. *Miranda*, 133 S.W.3d at 228. However, if the evidence creates a fact question on the jurisdictional issue, the trial court must deny the plea and submit the disputed fact issue to the

fact finder for resolution. *Id.* at 227-28; *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

In reviewing a ruling on a plea to the jurisdiction, the appellate court applies a standard of review that generally mirrors the traditional summary judgment standard of review. *Miranda*, 133 S.W.3d at 228. The governmental entity is required to meet the summary judgment standard of proof for its assertion that the trial court lacks jurisdiction, i.e., no disputed issue of material fact. *Id.* Then, the plaintiff must show there is a disputed material fact regarding the jurisdictional issues to defeat the government's plea to the jurisdiction. *Id.* The appellate court takes as true all evidence favorable to the non-movant, and resolves any doubts and indulges every reasonable inference in the non-movant's favor. *Id.* The appellate court does not look to the merits of the cause of action, but considers only the pleadings and the evidence relevant to the jurisdictional inquiry. *Id.* at 227; *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

## STANDING

Standing requires (1) "a real controversy between the parties" that (2) "will be actually determined by the judicial declaration sought." *Austin Nursing Center, Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Tex. Assoc. of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993). Without standing, a court lacks subject matter jurisdiction to hear the case. *Lovato*, 171 S.W.3d at 849; *Tex. Assoc. of Bus.*, 852 S.W.2d at 443. A determination of standing focuses on whether a party has a "justiciable interest" in the outcome of the lawsuit, such as when it is personally aggrieved or has an enforceable right or interest. *Lovato*, 171 S.W.3d at 849 (citing *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996)). As a component of subject matter jurisdiction, standing is a question of law reviewed de novo.

*Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46.

On appeal, the City argues the trial court erred in denying its plea to the jurisdiction based on the Appellees' lack of standing to pursue a declaratory judgment for vested rights because: (i) no "permit" rights accrued to them under Chapter 245 based on the Water or Sewer Reports; and (ii) none of the Appellees are "permit applicants" or owners of the Subject Property, or stand in their shoes, with respect to the Water and Sewer Reports. The City contends the undisputed jurisdictional facts establish Appellees' lack of standing because, as neither property owners nor permit applicants, they will suffer no "distinct injury" and no "real, live controversy" exists which will be resolved by a judicial declaration of vested rights. *See Brown v. Todd*, 53 S.W.3d 297, 305 (Tex. 2001). The City also asserts the declaratory judgment suit must be dismissed because there is no justiciable controversy between the parties. *See Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995) ("A declaratory judgment is appropriate only if a justiciable controversy exists as to the rights and status of the parties and the controversy will be resolved by the declaration sought."). Appellees complain that the City's assertion that there is "no justiciable controversy" is being raised for the first time on appeal; therefore, they assert we may not consider it because it falls outside the scope of this interlocutory appeal under section 51.014(a)(8). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *see also Kinney Cnty. Groundwater Conservation Dist. v. Boulware*, 238 S.W.3d 452, 461-62 (Tex. App.—San Antonio 2007, no pet.) (appellate review of plea to jurisdiction is confined to grounds raised in trial court). It is apparent, however, that the City's assertion that there is no "justiciable controversy" is part and parcel of its standing argument that there is no "real controversy," and that the Appellees, as neither owners, permit applicants, nor successors

in interest, have no "justiciable interest" in the outcome of this lawsuit; it is not a wholly unrelated ground for the plea to the jurisdiction that is being raised for the first time on appeal. *See Real-Edwards Conservation & Reclamation Dist. v. Save The Frio Foundation, Inc.*, No. 04-09-00502-CV, 2010 WL 547045, at \*5-6 (Tex. App.—San Antonio Feb. 17, 2010, no pet.) (mem. op.) (noting that ripeness and standing are related doctrines of justiciability which may not be waived, and questioning *Boulware*'s holding that standing could not be raised in plea to jurisdiction appeal unless raised in trial court) (citing *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000)).

### 1. <u>No Statutory "Permit" Rights Accrued Under Water or Sewer Reports</u>

The City first argues the Appellees lack standing because neither the Water Report/Commitment nor the Sewer Report qualify as a permit, or application for a permit, as the term "permit" was defined in section 245.001 in 1993 and 1994 on the dates of those reports. Specifically, the City asserts the 2005 amendment to section 245.001(1) expanding the definition of a "permit" to include a "contract or other agreement for construction related to, or provision of, service from a water or wastewater utility owned, operated, or controlled by a regulatory agency" was a change in the law that is presumed to apply only prospectively unless expressly made retroactive. *See* TEX. GOV'T CODE ANN. § 311.022 (West 2005) (providing a statute is presumed to be prospective unless expressly made retrospective). The Appellees argue that when section 245.003 addressing the applicability of Chapter 245 is read together with section 245.001(1), the plain statutory language clearly shows the amended definition of a "permit" is meant to apply retroactively. *Id.* §§ 245.001(1), 245.003. *See Hernandez v. Ebrom*, 289 S.W.3d 316, 318 (Tex. 2009) (statutory interpretation begins with plain language of statute); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008) (court gives effect to legislative intent as

expressed by statute's words). The City disagrees, arguing that section 245.003 does not cause the expanded "permit" definition to be retroactive because it operates only as a "savings clause" for projects existing at the time of the inadvertent repeal of another related statute, Chapter 481 of the Government Code; the City asserts the legislative history supports this interpretation of section 245.003.

The plain language of section 245.003 states, "This chapter applies only to a project in progress on or commenced after September 1, 1997." TEX. LOC. GOV'T CODE ANN. § 245.003. Appellees contend, and we agree, that this statutory language is a "clear and unambiguous expression of retroactive application" of the entirety of Chapter 245. This interpretation of section 245.003 is supported by the fact that the 2005 amendment to the definition of a "permit" was not carved out from such retroactive application, as other amendments to Chapter 245 were, such as the amendment to section 245.002(g). *See id.* § 245.002(g) (expressly providing, "Notwithstanding Section 245.003, the change in law made . . . by S.B. No. 848 . . . appl[ies] only to a project commenced on or after the effective date of that Act."). With respect to the City's argument that section 245.003 operates only as a savings clause related to the unintentional repeal of Chapter 481, that intent is belied by the plain language on the face of the statute which addresses applicability of Chapter 245 as a whole.

Finally, even under section 245.001(1)'s expanded definition of a "permit," the City contends the Water Report/Commitment and Sewer Report do not qualify as "permits" because they were only feasibility studies and proposals for potential future agreement, not "contracts or agreements" for the provision of water or sewer services. *Id.* § 245.001(1). The terms of the documents themselves negate that argument. As discussed *supra*, the language in the August 10, 1993 letter from SAWS clearly states that SAWS's Board of Trustees has "approved extension

of water service" to the Rogers Ranch development pursuant to the August 3, 1993 Water Report/Commitment; it places certain obligations on the developer for funding, as well as construction of on-site facilities, as part of "this water service commitment." The September 29, 1999 letter from SAWs confirmed completion of those requirements by the developer. By its plain terms, the Water Report/Commitment constitutes a "permit," that is, it is a "contract or other agreement for construction related to, or provision of, service from a water . . . utility" owned by a political subdivision. *Id.* In addition, the cover letter to the Sewer Report dated July 25, 1994 clearly requests "written approval" of the report by SAWS "so that design of the infrastructure may commence;" the report states it is "a plan for providing sanitary sewer service to the Rogers Ranch Development" and "has been prepared to satisfy the contract requirements." By its terms, the Sewer Report is a request, or an "application," for a "permit" for sewer service from SAWS for the Rogers Ranch development. *See id.* at §§ 245.001(1), 245.002(b) (establishing vested rights in a project as of the date of the "original application for the first permit" in a series of permits for a project). The Sewer Contract approved by the SAWS Board of Trustees on March 12, 1996, and based on the July 25, 1994 Sewer Report, is a "contract . . . for . . . provision of [] service from a . . . wastewater utility" owned by a political subdivision, i.e., a "permit." *Id.* at § 245.001(1). These documents evidence a present agreement by SAWS for the provision of water and sewer service to Rogers Ranch, not merely the potential for a future agreement, and fall within section 245.001(1)'s definition of a "permit."

### 2. **None of the Appellees were "Permit Applicants"**

Even if the Water and Sewer Reports qualify as "permits," or permit "applications," the City asserts that only a "permit applicant" can bring a declaratory judgment action under section 245.006; because none of the Appellees are listed as "applicants" on the Water

Report/Commitment and Sewer Report/Contract, they therefore lack standing to sue. TEX. LOC. GOV'T CODE ANN. § 245.006. The City also argues that there are no pleadings or evidence showing how any of the Appellees "stands in the shoes" of the original owners or permit applicants relating back to the 1993 Water Report and 1994 Sewer Report. As authority, the City relies solely on *Cernosek Enters., Inc. v. City of Mont Belvieu*, 338 S.W.3d 655, 662 (Tex. App.–Houston [1st Dist.] 2011, no pet.), but that case is distinguishable because there a third party who was a stranger to the transaction was the party seeking a declaration of vested rights.

As the Appellees note, the plain language of section 245.006 contains no such requirement for standing to sue to enforce Chapter 245. Section 245.006 is titled, "Enforcement of Chapter," and simply provides, "This chapter may be enforced only through mandamus or declaratory or injunctive relief." TEX. LOC. GOV'T CODE ANN. § 245.006(a). Subsection (b) further provides that, "A political subdivision's immunity from suit is waived in regard to an action under this chapter." *Id.* at § 245.006(b). Thus, the plain language of section 245.006 clearly authorizes enforcement of rights under Chapter 245 against a political subdivision through one of the specified actions in a court of law. The statute imposes no requirement that a plaintiff must be designated as a "permit applicant" in order to enforce its statutory rights under Chapter 245.

The Appellees' pleadings affirmatively allege the limited partnership plaintiffs are "owners" or "part owners" of the Subject Property, and that vested rights have accrued under Chapter 245 which they seek to enforce; Appellees further allege that Bitterblue is the general partner and/or agent of some of the limited partnership plaintiffs. Although we generally take these alleged facts as true in the context of a plea to the jurisdiction, the City has challenged the existence of these alleged jurisdictional facts. Therefore, the City had the burden to present

conclusive proof in the trial court establishing the lack of subject matter jurisdiction. *See Miranda*, 133 S.W.3d at 227-28. The City failed to meet its burden to present conclusive evidence that any of the limited partnerships are not in fact owners or part owners of the Subject Property, and that Bitterblue is not an agent or general partner of the alleged limited partnerships. *See id.* at 228. At most, the evidence submitted by the City raises disputed issues of fact as to the relationships between, and ownership interests of, the limited partnerships and Bitterblue.[10] Accordingly, denial of the City's plea to the jurisdiction on this basis was proper. *Id.* at 227-28.

Further, with respect to plaintiffs Bitterblue and Denton Development, the Appellees' pleadings allege they are indeed "permit applicants" as well as the "developers" for the Project. The plain language of the Water Report/Commitment and Sewer Report/Contract make it clear that the developers are the "applicants," acting on behalf of the owners, who are requesting extension of these utility services to the Project. In fact, the SAWS letters confirming approval of the Water Report/Commitment place the obligations on the "developer" to comply with the requirements for extension of the water service; although none of the Appellees are specifically named in the Water Report/Commitment, the "owners" of the 1780-acre tract to which the water service is being extended are referenced. Moreover, the documents are clear that Pape-Dawson was merely the engineering firm representing the Rogers Ranch owners and developers. Finally, with respect to the Sewer Contract, Bitterblue as the "developer" is actually a party to the agreement along with SAWS. Thus, Bitterblue and Denton Development, as developers for the Project, have standing to seek a declaration of vested rights under Chapter 245.

---

[10] The City submitted print-outs from the Texas Secretary of State's Office showing that MH-II Development, Ltd. is a limited partnership whose general partner is NWMH Development, L.L.C., and that Shavano Rogers Ranch North No. 3, Ltd. is a limited partnership whose general partner is Bitterblue, Inc. The Appellees submitted the affidavits of Jean Rogers Winchell, Wallace Rogers, III, and William Eugene Powell of Bitterblue explaining the complex relationships between the various limited partnerships, limited liability corporations, general partners, and agents involved in the Rogers Ranch Development Project. The affidavit of Gene Dawson of Pape-Dawson Engineers was also submitted.

The effect of vested rights under Chapter 245 of the Local Government Code is to "freeze" the land use regulations as they existed at the time the first permit application was filed through completion of the "project;" in other words, a project with vested rights is not subject to intervening regulations or changes after the vesting date. TEX. LOC. GOV'T CODE ANN. § 245.002(b); *Quick v. City of Austin*, 7 S.W.3d 109, 128 (Tex. 1999). A "project" is defined as "an endeavor over which a regulatory agency exerts its jurisdiction and for which one or more permits are required to initiate, continue, or complete the endeavor." TEX. LOC. GOV'T CODE ANN. § 245.001(3). Recently, in *Harper Park Two, LP v. City of Austin*, 359 S.W.3d 247 (Tex. App.—Austin 2011, pet. denied), the Austin Court of Appeals addressed how to identify the relevant "project" to which vested rights have attached under Chapter 245. The court explained that a "project" for purposes of vested rights under Chapter 245 is the single endeavor reflected in the original application for the first permit in a series, rather than individual components of the larger, original endeavor that could subsequently require separate permits. *Id.* at 256 (citing *Hartsell v. Town of Talty*, 130 S.W.3d 325, 328 (Tex. App.—Dallas 2004, pet. denied)). The court expressly rejected the narrow interpretation of the term "project" proposed by the City of Austin. *Id.* at 257-58.

In this court's opinion in *City of San Antonio v. En Seguido, Ltd.*, 227 S.W.3d 237 (Tex. App.—San Antonio 2007, no pet.), we recognized that rights vest in a particular project, not in the property itself; therefore, subsequent changes in ownership of the property do not affect the vested rights. *Id.* at 242-43. In reaching this holding, we quoted with approval the following reasoning from the Attorney General's Opinion, "it is irrelevant whether the owner who files the original application for the first permit retains the property for the duration of the project or conveys the property." *Id.* at 242 (quoting TEX. ATTY GEN. OP. No. JC-0425 (2001)). A project

is not specific to a person, and does not terminate each time the project is sold. *Id.* Because vested rights attach to the project, and not to any particular property owner or permit holder, they follow along with any conveyances or transfers of rights related to the project. *Id.* at 242-43; *Harper Park*, 359 S.W.3d at 250.

### *Conclusion*

The Appellees have shown that a live justiciable controversy exists as to the rights and status of the parties which will be actually resolved by the judicial declaration sought under Chapter 245. *Lovato*, 171 S.W.3d at 849; *Beadle*, 907 S.W.2d at 467. The Appellees' pleadings affirmatively allege the limited partnership plaintiffs are owners or part owners of the Subject Property, and that Bitterblue and Denton Development are the developers and permit applicants for the Subject Property and/or Project; they also allege Bitterblue is a general partner or agent of some of the limited partnerships. The evidence submitted on the jurisdictional facts challenged by the City does not conclusively establish a lack of subject matter jurisdiction; at most, it raises issues of disputed jurisdictional facts. Therefore, the trial court properly denied the City's plea to the jurisdiction on lack of standing. *Miranda*, 133 S.W.3d at 227-28.

### FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

Assuming any of the Appellees have standing, the City asserts the trial court erred in denying its second plea to the jurisdiction based on failure to exhaust administrative remedies in that the amount of acreage and the "permit" relied on in the lawsuit are different than the vested rights request presented to the City. Specifically, the City argues on appeal that (i) the "fundamental nature" and extent of the requested vested rights have changed because the lawsuit now defines the "Project" as the 1780 acres "*less* any properties which have been sold by the

Plaintiffs," and (ii) the Sewer Report was never presented as a basis for vested rights to the City Planning Commission or City Council.

An obligation to exhaust administrative remedies is triggered when the legislature grants exclusive jurisdiction to an administrative body by giving it the sole authority to make initial decisions related to a particular matter. *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006); *Daughtry v. Atascosa Cnty. Appraisal Dist.*, 307 S.W.3d 343, 345 (Tex. App.—San Antonio 2009, no pet.) (where legislature has given administrative remedies for action by an administrative agency which aggrieves a person, he must first exhaust those remedies before he can raise his complaint in court). An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that [the Legislature] intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002).

Assuming without deciding that the City has exclusive jurisdiction over requests for the recognition of vested rights, we conclude the Appellees have exhausted the City's administrative procedure with respect to their request for recognition of vested rights for the Project. The City has enacted an administrative procedure for the recognition of statutory vested rights under Chapter 245. *See* CITY OF SAN ANTONIO UNIFIED DEVELOPMENT CODE § 35-712. It provides the right of appeal from the Director's initial determination to the City Planning Commission, and the further right of appeal to the City Council. *Id.* Here, the Appellees initially requested vested rights as of March 12, 1996 based on the Sewer Contract, which was based on the July 25, 1994 Sewer Report; they received a denial of their request from the City's Director of Planning and Development Services. Thereafter, the Appellees appealed, and "resubmitted" an amended request for vested rights as of August 3, 1993 based on the Water Report/Commitment; the City

Planning Commission considered that request and granted it, thereby recognizing that the Project had vested rights as of the August 3, 1993 Water Report/Commitment. The issue was then heard at the next administrative level, the City Council, when the City Manager appealed the Planning Commission's grant of the vested rights. When the City Council agreed with the City Manager and denied the request for vested rights based on the Water Report/Commitment, the Appellees filed suit seeking judicial relief.

This court has recognized that the City must be given the opportunity "to make a final determination as to which set of land-use regulations apply" to the project at issue before a court intervenes. *Hardee v. City of San Antonio*, No. 04-07-00740-CV, 2008 WL 2116251, at *2-3 (Tex. App.—San Antonio May 21, 2008, no pet.) (mem. op.) (affirming grant of plea to jurisdiction because controversy was not ripe for judicial adjudication where City had never made a decision regarding applicability of challenged ordinances to development of property; no application for a permit requiring City's approval or disapproval under Chapter 245 had been filed). *Hardee* quotes the following reasoning by the Austin Court of Appeals:

> A regulatory agency ought to have the opportunity to make a final determination as to which set of land-use regulations apply to a specific plat before a court intervenes. The individual and particular nature of this statutory scheme requires that individual permits be issued or denied for a controversy to be ripe for adjudication. Otherwise, a court would be ruling on a hypothetical application of land-use regulations to plats and interfering with the functions of land-use regulatory agencies before they would have the opportunity to perform those functions themselves.

*Id.* (quoting *Save Our Springs Alliance*, 149 S.W.3d at 684. Here, the City had the opportunity to, and did, consider and rule on the Appellees' request for vested rights for the Project—based on both the Water Report/Commitment and the Sewer Contract, which was based on the Sewer Report.

As to the City's complaint that the lawsuit now seeks recognition of vested rights as to "less than" the entire 1780 acres, the parties agreed at oral argument that the lesser amount of acreage is included within the original 1780-acre tract making up the Project. Based on *En Seguido*, vested rights attach to the project, not the land, and are not affected by subsequent conveyances of portions of the original acreage, i.e., reductions in acreage. *En Seguido*, 227 S.W.3d at 242-43. The fact that acknowledgement of vested rights was originally sought for the entire 1780 acres, and the lawsuit now seeks it for a lesser acreage, does not affect the vesting of rights in the Project. *See id.*

### *Conclusion*

Assuming the Appellees were obligated to exhaust their administrative remedies with the City, we conclude they did so. The Appellees obtained a preliminary administrative decision from the City Planning Commission, and a final administrative decision from the City Council, as to their request for vested rights based on the Water Report/Commitment. With respect to the Sewer Report, alleged as an alternative ground for vested rights in the lawsuit, the City likewise had an opportunity to, and did, consider the Sewer Report which formed the basis of the Sewer Contract submitted as the initial application for vested rights, with the Director of Planning denying the request.[11] We conclude the Appellees have exhausted their administrative remedies; therefore, the trial court did not err in denying the City's plea to the jurisdiction on this ground.

### CONCLUSION

Based on the foregoing analysis, the trial court's orders denying both of the City's pleas to the jurisdiction are AFFIRMED, and the case is remanded for further proceedings.

Phylis J. Speedlin, Justice

---

[11] During at least one hearing in this lawsuit, the City conceded that the Project has vested rights as of the date of the Sewer Contract between Bitterblue and SAWS.