

# Fourth Court of Appeals

## San Antonio, Texas

## OPINION

No. 04-24-00532-CV

**CITY OF CIBOLO**,
Appellant

v.

**CIBOLO TURNPIKE, LP**,
Appellee

From the 2nd 25th Judicial District Court, Guadalupe County, Texas
Trial Court No. 20-0062-CV-A
The Honorable Margaret Garner Mirabal, Judge Presiding

Opinion by:   Irene Rios, Justice

Sitting:   Irene Rios, Justice
Lori I. Valenzuela, Justice
H. Todd McCray, Justice

Delivered and Filed: November 19, 2025

AFFIRMED

Appellant City of Cibolo ("the City") appeals the trial court's order denying its plea to the jurisdiction. The City argues the trial court does not have jurisdiction over appellee Cibolo Turnpike, LP's ("CTLP") breach of contract claim because CTLP does not have standing to sue the City and none of the requested relief is recoverable under the City's waiver of governmental immunity. We hold CTLP has standing to pursue its breach of contract claim and the City's waiver

of governmental immunity permits suit for a breach of contract claim where the relief requested is for specific performance. Because the trial court has jurisdiction to adjudicate CTLP's request for specific performance, we need not determine in this interlocutory appeal whether it may recover monetary damages from the City. We affirm the trial court's order denying the plea to the jurisdiction.

## BACKGROUND

According to CTLP's original petition, the City sought to build a toll road that ran through Cibolo, Texas. The City and CTLP entered into a development agreement (the "Agreement") that laid out the parties' obligations in pursuit of construction of the toll road. According to the City, the toll road was to be funded entirely by CTLP and no public funds were to be expended for the project. At some point, the City began to suspect CTLP was not meeting its metrics to advance the project under the Agreement and requested additional information from CTLP. Unsatisfied with CTLP's response, the City terminated the Agreement citing CTLP's alleged failure to meet the metrics in the agreement. CTLP sued the City for breach of contract. After more than four years of litigation, the City filed a plea to the jurisdiction claiming the trial court did not have jurisdiction over CTLP's suit for breach of contract. The trial court denied the plea to the jurisdiction. The City appeals.

## STANDARD OF REVIEW

A plea to the jurisdiction challenges the trial court's authority to determine the subject matter of a specific cause of action. *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 241 (Tex. App.—San Antonio 2012, pet. denied). Because subject matter jurisdiction presents a question of law, we review the trial court's decision under a de novo standard of review. *Id.*

"[T]o prevail, the party asserting the plea to the jurisdiction must show that even if all the allegations in the plaintiff's pleadings are taken as true, there is an incurable jurisdictional defect apparent from the face of the pleadings, rendering it impossible for the plaintiff's petition to confer jurisdiction on the trial court." *Tex. Parks & Wildlife Dep't v. Dearing*, 150 S.W.3d 452, 457–58 (Tex. App.—Austin 2004, pet. denied). "When a defendant challenges jurisdiction, a court is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (internal quotation marks omitted).

We also review issues of statutory construction de novo. *See Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010).

### STANDING

In its fifth issue, the City asserts that CTLP does not have standing because CTLP's alleged injuries are not traceable to the City.

"Lack of constitutional standing deprives the trial court of subject-matter jurisdiction." *Busbee v. County of Medina*, 681 S.W.3d 391, 395 (Tex. 2023). "Standing is thus a threshold jurisdictional issue that parties may raise by a plea to the jurisdiction." *Id.* To have standing, the plaintiff must show a concrete injury that is traceable to the defendant's conduct and redressable by court order. *Id.* "[A] plaintiff does not lack standing simply because some other legal principle may prevent it from prevailing on the merits; rather, a plaintiff lacks standing if its claim of injury is too slight for a court to afford redress." *McLane Champions, LLC v. Hous. Baseball Partners LLC*, 671 S.W.3d 907, 913 (Tex. 2023). "A plaintiff establishes standing to maintain a breach-of-contract action by demonstrating that it has an enforceable interest as a party to the contract, as an

assignee of a party, or as a third[-]party beneficiary." *Hinton v. Nationstar Mortgage LLC*, 533 S.W.3d 44, 48 (Tex. App.—San Antonio 2017, no pet.).

Here, CTLP and the City entered into the developmental agreement. Thus, they are both parties to the Agreement that CTLP claims the City breached. CTLP alleges the City breached this Agreement when it failed to fully cooperate with CTLP to advance the project. CTLP also alleges the City's breach of the Agreement caused it financial harm and the potential collapse of the toll road project. As such, CTLP has alleged a concrete injury traceable to the City, i.e., the City's breach of the Agreement, and seeks damages and/or specific performance by judicial decree. We conclude CTLP's pleadings establish that it has standing to bring its suit for breach of contract.

The City's fifth issue is overruled.

## GOVERNMENTAL IMMUNITY

In its remaining issues, the City argues the trial court does not have jurisdiction over CTLP's breach of contract claim because governmental immunity for CTLP's claim has not been waived by the legislature. Although governmental immunity for breach of contract claims is typically waived under section 271.152 of the local government code, the City argues CTLP must plead relief allowed under section 271.153 to be entitled to the waiver of immunity under section 271.152. CTLP pled various damages flowing from the alleged breach of contract but also pled a request for specific performance.[1] The City contends the relief pled by CTLP is outside the waiver of governmental immunity.

"At its core, the doctrine [of governmental immunity] recognizes that if the government should undertake to guarantee to the public the carefulness of all its officers, agents, and employees, it would soon become involved in endless embarrassments, difficulties, and losses

---

[1] In its fourth issue, the City contends actual damages and specific performance are not allowable remedies under the City's waiver of governmental immunity in chapter 271 of the local government code.

which would be so subversive to the public interest as to compel it to abandon all but the bare essentials of a public government." *Hughes v. Tom Green County*, 573 S.W.3d 212, 218 (Tex. 2019) (internal quotation marks omitted). "[Governmental] immunity thus serves to prevent governmental paralysis." *Id.* "It protects the State and its political subdivisions from endless litigation, while leaving to the [l]egislature to determine how and when to allow tax resources to be shifted away from their intended purposes toward defending lawsuits and paying judgments." *Id.* (internal quotation marks omitted).

"In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006) (footnote omitted); *Dallas/Fort Worth Int'l Airport Bd. v. Vizant Techs., LLC*, 576 S.W.3d 362, 366 (Tex. 2019) ("Governmental immunity generally protects local governmental entities against both lawsuits and legal liabilities."). "A governmental entity waives its immunity *from liability* by entering into a contract, voluntarily binding itself like any other party to the agreement." *Vizant Techs.*, 576 S.W.3d at 367. However, courts "have consistently deferred to the [l]egislature to waive [governmental] immunity from suit, because this allows the [l]egislature to protect its policymaking function." *Tooke*, 197 S.W.3d at 332. Thus, "only the legislature can waive governmental immunity *from suit*, and when it chooses to waive such immunity[,] it must express that intent using clear and unambiguous language." *Vizant Techs.*, 576 S.W.3d at 367 (internal quotation marks omitted).

Section 271.152 of the Texas Local Government Code waives governmental immunity for some suits that involve a breach of contract. TEX. LOC. GOV'T CODE ANN. § 271.152. It provides:

> A local governmental entity that is authorized by statute or the constitution to enter into a contract and that enters into a contract subject to this subchapter waives

sovereign immunity to suit for the purpose of the adjudicating a claim for breach of the contract, subject to the terms and conditions of this subchapter.

*Id.* The statute defines a contract that is subject to this subchapter as: "(A) a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity; or (B) a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." *Id.* § 271.151(2).

The subchapter's "terms and conditions" include section 271.153, titled "Limitations on Adjudication Awards[,]" which limits the type of damages that a plaintiff may recover in a breach of contract suit against a local governmental entity. *See Vizant Techs.*, 576 S.W.3d at 368; *see also Zachry Const. Corp. v. Port of Hous. Auth. of Harris Cnty.*, 449 S.W.3d 98, 108 (Tex. 2014) ("The waiver does not extend to tort suits, suits in federal court, or allow recovery beyond that permitted by [s]ection 271.153."); *Hays St. Bridge Restoration Grp. v. City of San Antonio*, 570 S.W.3d 697, 706 (Tex. 2019) (internal quotation marks and alterations omitted) ("Stated more succinctly, the other provisions of the Act are limitations on the waiver of immunity."). Section 271.153 provides:

(a) Except as provided by [s]ubsection (c), the total amount of money awarded in an adjudication brought against a local governmental entity for breach of a contract subject to this subchapter is limited to the following:

(1) the balance due and owed by the local governmental entity under the contract as it may have been amended, including any amount owed as compensation for the increased cost to perform the work as a direct result of owner-caused delays or acceleration;

(2) the amount owed for change orders or additional work the contractor is directed to perform by a local governmental entity in connection with the contract;

(3) reasonable and necessary attorney's fees that are equitable and just; and

(4) interest as allowed by law, including interest as calculated under Chapter 2251, Government Code.

(b) Damages awarded in an adjudication brought against a local governmental entity arising under a contract subject to this subchapter may not include:

    (1) consequential damages, except as expressly allowed under [s]ubsection (a)(1);

    (2) exemplary damages; or

    (3) damages for unabsorbed home office overhead.

(c) Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by [s]ection 271.151(2)(B).

*Id.* § 271.153. "In summary, the statute waives a local governmental entity's immunity from suit only for claims alleging breach of a contract 'subject to this subchapter' and seeking relief listed in [sub]section 271.153(a), but not for claims seeking relief listed in [sub]section 271.153(b)." *Vizant Techs*, 576 S.W.3d at 368 (citing *Zachry*, 449 S.W.3d at 111). It appears that the damage limitations in subsections 271.153(a) and (b) applies to contracts for goods or services—like the contract at issue here—as defined by subsection 271.151(2)(A), and subsection 271.153(c) applies to water reclamation contracts as defined by subsection 271.151(2)(B).

However, neither subsection 271.153(a) nor subsection 271.153(b) mention specific performance or any other form of equitable relief. Thus, when analyzing these two provisions, the supreme court previously held in *Hays Street* that neither provision limits a city's waiver of immunity under section 271.152 when the plaintiff seeks an equitable remedy such as specific performance. *Hays St. Bridge*, 570 S.W.3d at 707–08. The supreme court reasoned subsections 271.153(a) and (b) limit categories of damages and do not even mention equitable remedies. *Id.* Because "[d]amages and specific performance are alternatives to one another[,]" the supreme court determined the legislature's use of the word "damages" rather than using the word "remedies" must be meaningful. *Id.* "To read [subsections 271.153(a) and (b)] as impliedly prohibiting every suit seeking an equitable remedy against a local governmental entity would too greatly restrict the general waiver of immunity in [s]ection 271.152." *Id.* at 708.

However, the *Hays Street* court expressly limited its holding to contracts that were executed before September 1, 2013. *Id.* at 699 n.2. The court stated:

> This case centers on a Memorandum of Understanding executed in 2002. At that time, the Act applied to a "written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local governmental entity." Act of May 23, 2005, 79th Leg. R.S., ch. 604, § 1, sec. 271.151(2), 2005 Tex. Gen. Laws. 1548, 1548 (current version at TEX. LOC. GOV'T CODE § 271.151(2)(A)). In 2013, the [l]egislature amended [s]ection 271.153 of the Act to add subsection (c), which states: "Actual damages, specific performance, or injunctive relief may be granted in an adjudication brought against a local governmental entity for breach of a contract described by [s]ection 271.151(2)(B)." Act of May 24, 2013, 83rd Leg., R.S., ch. 1138, § 3, sec. 271.153, 2013 Tex. Gen. Laws 2756, 2758. The referenced provision added to the contracts covered by the Act: "a written contract, including a right of first refusal, regarding the sale or delivery of not less than 1,000 acre-feet of reclaimed water by a local governmental entity intended for industrial use." *Id.* § 2, sec. 271.151(2), 2013 Tex. Gen Laws at 2757–2758 (codified as TEX. LOC. GOV'T CODE § 271.151(2)(B)). The 2013 amendments "apply [only] to a claim that arises under a contract executed on or after [their] effective date[,]" and "[a] claim that arises under a contract executed before [their] effective date . . . is governed by the law in effect on the date the contract was executed." *Id.* § 4(c), 2013 Tex. Gen. Laws at 2758. Thus, we do not consider the effect of these amendments on the issue before us.

*Id.* Because the *Hays Street* court was interpreting a contract that was executed in 2002, it did not analyze section 271.153's limitations to the waiver of governmental immunity with the legislature's addition of subsection 271.153(c) via the 2013 amendments. *Id.* And it declined to address what effect those amendments would have on the limitation of section 271.152's general waiver of immunity. *Id.* Thus, it remains an open question—at least in our jurisdiction—whether the 2013 amendments adding subsection 271.153(c) would foreclose a party's breach of contract suit seeking specific performance, for goods or service contracts, from a local governmental entity. *Id.* We must review the relevant statutory provisions to determine whether the legislature intended to exclude specific performance from the relief CTLP may obtain under the City's waiver of governmental immunity.

"Issues of statutory construction are reviewed de novo." *ExxonMobile Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017). "In construing a statute, our objective is to determine and give effect to the [l]egislature's intent." *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022). "We rely on the plain meaning of the text as expressing legislative intent unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *First State Bank of DeQueen*, 325 S.W.3d at 635. "We presume the [l]egislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Id.*

We also recognize it is "a fundamental principle of statutory construction that words' meanings cannot be determined in isolation but must be drawn from the context in which they are used." *Willacy Cnty. Appraisal Dist. v. Sebastian Cotton & Grain, Ltd.*, 555 S.W.3d 29, 39 (Tex. 2018). "In ascertaining legislative intent, we read the entire statute as a whole and do not consider isolated sections, provisions, or terms in a vacuum." *EXLP Leasing, LLC v. Galveston Cent. Appraisal Dist.*, 554 S.W.3d 572, 582 (Tex. 2018). We presume the legislature wants all statutory provisions to be fully effective and we may insert additional words into a statutory provision only when it is necessary to give effect to the clear legislative intent. *DLB Architects, P.C. v. Weaver*, 305 S.W.3d 407, 409 (Tex. App.—Dallas 2010, pet. denied) (citing *Hunter v. Fort Worth Capital Corp.*, 620 S.W.2d 547, 552 (Tex. 1981)); *see also* TEX. GOV'T CODE ANN. § 311.021. Thus, we must construe statutes in a way that harmonizes and gives effect to the different provisions when possible. *In re Mem'l Hermann Hosp. Sys.*, 464 S.W.3d 686, 716 (Tex. 2015) (orig. proceeding) (citing TEX. GOV'T CODE ANN. §§ 311.025, 311.026(a)); *Tex. Indus. Energy Consumers v. CenterPoint Energy Hous. Elec., LLC*, 324 S.W.3d 95, 107 (Tex. 2010).

The City argues the addition of the 2013 amendments to section 271.153 supports the conclusion that the legislature did not intend to waive governmental immunity for a breach of contract claim that seeks the equitable remedy of specific performance for contracts providing services or goods to a political subdivision. Because the legislature expressly identified equitable remedies in subsection 271.153 for enforcement of reclamation water contracts as defined by subsection 271.151(2)(B), the City argues the legislature must have intended for those equitable remedies to not be available for the enforcement of all other contracts defined by subsection 271.151(2)(A). Specifically, the City contends the legislature's express inclusion of injunctive relief and specific performance in subsection 271.153(c) for contracts pertaining to reclaimed water necessarily implies that the legislature did not intend for the city's immunity to be waived for requests of specific performance in other contracts covered by the Act. The City relies on the *expressio unius* canon of statutory construction, commonly referred to as the negative implication canon, which means that "expressing one item of a commonly associated group or series excludes another left unmentioned." *City of Austin v. Powell*, 704 S.W.3d 437, 453 (Tex. 2024). However, the force of any negative implication depends on the context in which it is used. *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 429 (Tex. 2017).

While recognizing the validity of the negative implication canon, the supreme court has fairly consistently rejected its application because the "canon does not apply unless the statutory context makes it fair to suppose that the legislature considered the unnamed possibility and meant to say no to it." *Powell*, 704 S.W.3d at 453 (internal quotation marks omitted) (declining to apply the negative implication canon of construction when nothing in the statute indicates the legislature was concerned with the unnamed possibility and meant to say no to it); *see also Forest Oil Corp.*, 518 S.W.3d at 429 (declining to apply the canon where it was "certainly *possible* to read a negative

implication in [the applicable statute], but it is hardly *necessary*"); *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 878–79 (Tex. 2018) ("Again, though it is 'certainly *possible* to read a negative implication' in [the applicable statute], 'it is hardly *necessary*.'" (quoting *Forest Oil Corp.*, 518 S.W.3d at 429)); *In re J.S.*, 670 S.W.3d 591, 602 n.9 (Tex. 2023). Accordingly, courts have employed the negative implication canon of construction with great caution. *See, e.g., Chase v. State*, 448 S.W.3d 6, 14 (Tex. Crim. App. 2014) (citing *Ford v. United States*, 273 U.S. 593, 611–12 (1927); *United States v. Porter*, 745 F.3d 1035, 1046 (10th Cir. 2014)); *see also* Antonin Scalia & Bryan A. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 107 (2012) ("Virtually all the authorities who discuss the negative-implication canon emphasize that it must be applied with great caution, since its application depends so much on context."). In fact, when determining whether the legislature meant to abrogate a common law cause of action through a statutory scheme, the supreme court warned that this negative implication would require a "clear repugnance" between the statutory cause of action and the common law cause of action "to find that the former precludes the latter." *Koopmann*, 547 S.W.3d at 878.

Two of our sister courts have rejected the argument the City makes here, holding the 2013 amendment allowing equitable relief under subsection 171.253(c) for reclaimed water contracts does not necessarily imply equitable relief is unavailable for other service contracts. *See Hous. Cmty. Coll. Sys. v. HV BTW, LP*, 589 S.W.3d 204, 216–18 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Tex. Mun. League Intergovernmental Risk Pool v. City of Hidalgo*, No. 13-19-00096-CV, 2020 WL 1181251, at *7–9 (Tex. App.—Corpus Christi–Edinburg Mar. 12, 2020, no pet.). Both courts held the 2013 amendments were added to allow industrial water users to enforce contracts purchasing reclaimed water from political subdivisions and the legislature did not intend to limit the waiver of immunity for other types of contracts for services or goods provided to a political

subdivision.[2] *Id.* In other words, both courts concluded the legislature did not consider equitable relief for service or goods contracts defined by subsection 271.151(2)(A) when it added amendments that were only intended to affect the new waiver of immunity for water reclamation contracts defined by subsection 271.151(2)(B). We agree with our sister courts and hold the 2013 amendment to subsection 271.153 did not abrogate the supreme court's holding in *Hays Street Bridge*. *See Hous. Cmty. Coll. Sys.*, 589 S.W.3d at 217–18 (noting none of the language in chapter 271 relevant to service or goods contracts changed after the 2013 amendments and concluding specific performance is available for those contracts because the legislature did not expressly exclude specific performance as an available remedy for service contracts); *Tex. Mun. League Intergovernmental Risk Pool*, 2020 WL 1181251, at *8 (holding "the 2013 amendments to chapter 271 do not abrogate the holding in *Hays Street*").

The Fourteenth Court of Appeals in Houston reasoned:

> We ascertain the legislature's intent "from what it enacted." *See Wasson Interests, Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 438 (Tex. 2016). The 2013 amendment added a new category of contracts for which immunity is waived. Tex. Loc. Gov't Code § 271.151(2)(B). The monetary damages available for breach of this new category of contracts includes "actual damages," which is not the same as the types of damages that are available for breach of service contracts. *Id.* § 271.153(a) (limiting the "total amount of money awarded" for breach of service contracts to "the balance due and owed by the local governmental entity under the contract," "the amount owed for change orders or additional work the contractor is directed to perform," "reasonable and necessary attorney's fees," and "interest"), (c) (including "actual damages" for breach of relevant contracts for the sale or delivery of reclaimed water). These distinctions between available damages lead us to conclude that the legislature intended for the two types of contracts to be treated differently.

---

[2] The prior version of the statute only waived governmental immunity for breaches of contracts where services or goods were provided *to* the political subdivision. *See Ben Bolt-Palito Consol. Indep. Sch. Dist. v. Tex. Pol. Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 327 (Tex. 2006). However, it did not protect parties that purchased reclaimed water *from* political subdivisions. *See* Bill Analysis, Tex H.B. 3511, 83d Leg., R.S. (2013) ("Currently there is no remedy if a local governmental entity breaches a contract regarding the sale or delivery of reclaimed water intended for industrial use.").

The legislature excluded certain types of damages for breach of either type of contract. *Id.* § 271.153(b) ("Damages . . . may not include [certain] consequential damages[,] exemplary damages[,] or . . . damages for unabsorbed home office overhead."). The legislature did not similarly limit the types of equitable remedies available for breach of service contracts. If the legislature had intended to eliminate specific performance as an available remedy for service contracts, it could have done so. *See Wasson Interests*, 489 S.W.3d at 438 ("[T]his Court presumes the [l]egislature deliberately and purposefully selects words and phrases it enacts, as well as deliberately and purposefully omits words and phrases it does not enact."). Because the legislature did not expressly exclude specific performance as an available remedy for service contracts, we conclude that chapter 271 did not foreclose the [plaintiff's] lawsuit for specific performance under the current version of the statute.

*Hous. Cmty. Coll. Sys.*, 589 S.W.3d at 217–18. We agree with and adopt the *Houston Community College* court's reasoning. "The intent of the legislature 'must be expressed clearly, either explicitly or by necessary implication.'" *Tex. Mun. League Intergovernmental Risk Pool*, 2020 WL 1181251, at *8 (quoting *Forest Oil Corp.*, 518 S.W.3d at 429). "We cannot conclude that the legislature intended to restrict the availability of equitable relief or specific performance by enacting the 2013 amendments." *Tex. Mun. League Intergovernmental Risk Pool*, 2020 WL 1181251, at *8. "The amendments do not explicitly do so, and such restriction is not necessarily implied." *Id.*

At this stage of the litigation, we are only tasked with determining whether the trial court has jurisdiction over CTLP's suit for breach of contract. Having concluded that CTLP has standing to sue the City and the City's governmental immunity is waived—at least for CTLP's request for specific performance—we hold the trial court has jurisdiction over CTLP's suit for breach of contract.[3] Having answered the sole question before us—whether the trial court has jurisdiction

---

[3] The City argues in its brief that Cibolo Turnpike "cannot, as a matter of law, recover the damages[, and presumably equitable remedies,] it seeks." While that is a contention ripe for determination by the trial court, we are tasked only with determining whether the trial court has jurisdiction to hear the case, not with which party should prevail as a matter of law. Accordingly, we express no opinion on the merits of the City's claim that it should prevail as a matter of law because that question is not before us at this point in the litigation.

over this suit—we need not determine at this juncture whether CTLP can recover the monetary damages it requests. Thus, we do not reach the City's remaining issues. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

Accordingly, the City's fourth issue is overruled.

### CONCLUSION

We affirm the trial court's order denying City of Cibolo's plea to the jurisdiction.

Irene Rios, Justice