

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-16-00038-CV

**CITY OF FLORESVILLE**, Texas, City of Floresville City Council, City of Floresville City
Planning and Zoning Committee, and the Wilson County Appraisal District,
Appellants

v.

**STARNES INVESTMENT GROUP, LLC**,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 15-06-0367-CVW
Honorable Donna S. Rayes, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:       Sandee Bryan Marion, Chief Justice
               Marialyn Barnard, Justice
               Jason Pulliam, Justice

Delivered and Filed:  September 28, 2016

REVERSED AND RENDERED

This is an accelerated appeal from the trial court's denial of a plea to the jurisdiction filed
by the City of Floresville, Texas; City of Floresville City Council; City of Floresville City Planning
and Zoning Committee; and the Wilson County Appraisal District (collectively, the "appellants").
We reverse the trial court's order denying appellants' plea to the jurisdiction and render a dismissal
with prejudice of appellee's claims against appellants.

**BACKGROUND**

The facts in the underlying lawsuit are for the most part undisputed. In 2010, the City of Floresville ("the City") began to update and digitize its municipal city limits map. In 2011, Starnes Investment Group, LLC ("Starnes") began looking at property to develop as a commercial recreational vehicle park. In December 2011, Starnes began a feasibility study on property located in Wilson County. Starnes met with Wilson County and City officials, and was informed that the property was partially inside and partially outside the City, and entirely inside Wilson County.

In Spring 2012, the City's Code Compliance and Permitting Officer told Starnes that she saw no problem with approval of its proposed RV park so long as it complied with the City's Recreational Vehicle Development Ordinance. Starnes purchased the property and, on March 29, 2012, filed its zoning application with the City. On June 14, 2012, the City's attorney told Starnes the property was entirely outside the City limits; therefore, the City's zoning requirements were inapplicable. The City's attorney also told Starnes that approval by Wilson County was still required, and, on October 12, 2012, the Wilson County Commissioner's Court approved the project.

In 2013, the City completed its new map, which showed Starnes's property to be partially inside and partially outside the City's limits. On April 12, 2013, the City's attorney informed Starnes's attorney about the property's location within City limits, and that City zoning approval was now required. On September 12, 2013, the City approved Starnes's zoning application, and the property was then connected to City water and sewage services.

On June 26, 2015, Starnes sued the appellants alleging: (1) a takings claim under the Texas Constitution, (2) due process and equal protection violations, (3) violation of the Texas Vested Property Rights Act, (4) tortious interference with prospective business relations, (5) negligence under the Texas Tort Claims Act, and (6) civil conspiracy. Starnes also sought a declaratory

judgment as to its rights under Texas statutes and relevant City and Wilson County ordinances and regulations. The premise of Starnes's lawsuit is that it was harmed by the City's delay in approving its zoning application and delay in providing water and sewage from March 29, 2012 until September 12, 2013.

On July 27, 2015, the appellants filed a "Plea to the Jurisdiction, Special Exceptions, and General Denial." About five months later, the trial court conducted a hearing on the plea to the jurisdiction and special exceptions. At the end of the hearing, the trial court orally rendered its decision granting the special exceptions and allowing Starnes to re-plead no later than December 30, 2015. The trial court set a hearing for January 5, 2016 to sign the order.

On December 30, 2015, Starnes filed an amended petition alleging three causes of action: (1) a takings/inverse condemnation claim under the Texas Constitution, (2) due process and equal protection violations, and (3) violations of the Texas Vested Property Rights Act. Starnes did not request declaratory or injunctive relief in its amended petition. On January 5, 2016, the trial court signed an "Order on Plea to Jurisdiction and Special Exceptions" in which the trial court denied the plea and granted the special exceptions. Appellants filed this appeal arguing Starnes's amended petition failed to allege a claim for which appellants' governmental immunity has been waived and, therefore, the trial court lacked jurisdiction to hear the claims asserted by Starnes.

## COMPLAINTS RAISED FOR FIRST TIME ON APPEAL

Before considering the merits of appellants' arguments on appeal, we first consider whether appellants may challenge Starnes's amended petition. Starnes argues the invited error doctrine precludes appellants from complaining that the trial court allowed Starnes to re-plead rather than granting appellants' plea to the jurisdiction. Starnes contends appellants asked for and received the very relief they sought—that the trial court sustain their special exceptions. According to Starnes, because appellants' special exceptions were sustained and because appellants never filed

a pleading challenging Starnes's amended petition, appellants' complaints on appeal about the amended petition are barred.

Appellants contend on appeal that Starnes's amended petition was the live pleading before the trial court "when the trial court entered its Order granting Appellants' special exceptions, but denying the Plea on January 5, 2016." Appellants contend this left the amended petition "as the live pleading to which the plea to jurisdiction necessarily attached." However, the trial court's ruling denying the plea to the jurisdiction and sustaining the special exceptions was rendered on December 7, almost one month before the amended petition was filed. And, it is clear from the express language of the written order that the trial court did not consider the amended petition when it denied appellants' plea to the jurisdiction. However, this does not end the inquiry into whether appellants may challenge on appeal an amended petition that was not before the trial court when the trial court denied appellants' plea to the jurisdiction.

Sovereign immunity deprives courts of subject-matter jurisdiction. *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012). If immunity is first asserted on interlocutory appeal, an appellate court is not precluded "from having to consider the issue at the outset in order to determine whether it has jurisdiction to address the merits." *Id.* "Under *Rusk*, an appellate court must consider all of a defendant's immunity arguments, whether the governmental entity raised other jurisdictional arguments in the trial court or none at all." *Dallas Metrocare Servs. v. Juarez*, 420 S.W.3d 39, 41 (Tex. 2013); *see also Clint Indep. Sch. Dist. v. Marquez*, No. 14-0903, 2016 WL 1268000, at *14 (Tex. Apr. 1, 2016) ("Subject-matter jurisdiction cannot be created by waiver, and parties may raise challenges to subject-matter jurisdiction for the first time on appeal."). Therefore, although none of appellants' complaints about Starnes's amended petition were before the trial court when the trial court denied appellants' plea to the jurisdiction, "we must consider all

of [appellants'] immunity arguments" for the first time in this appeal.[1] *Dallas Metrocare Servs.*, 420 S.W.3d at 41.

## PLEA TO THE JURISDICTION

In a single issue on appeal, appellants assert that, despite being afforded the opportunity to re-plead and cure jurisdictional defects, Starnes's amended petition fails to allege a claim for which appellants' governmental immunity has been waived. Therefore, appellants argue the trial court erred in denying their plea to the jurisdiction.

### A. Standard of Review

Whether a court has subject-matter jurisdiction over a case is a question of law, which we review *de novo*. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). There are two general categories of pleas to the jurisdiction: (1) those that challenge only the pleadings, and (2) those that present evidence to challenge the existence of jurisdictional facts. *Id.* at 226-27. When, as here, a plea to the jurisdiction challenges only the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. *Id.* at 226. Our *de novo* review of such challenges looks to the pleader's intent and construes the pleadings in its favor. *Id.* If the pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should generally be given an opportunity to amend. *Id.* at 226-27.

---

[1] Following oral arguments in this appeal, this court allowed both parties to file post-submission briefs addressing whether we could review the appellants' jurisdictional challenges to the amended petition. In its post-submission brief, Starnes recognized this court could do so.

**B. Takings/Inverse Condemnation Claim**

In its amended petition, Starnes asserted the City's wrongful delay in approving its zoning application and delay in providing water and sewage services constituted a taking and deprived it of its reasonable investment backed expectations. Starnes contended it was denied all economically beneficial or productive use of its property from March 29, 2012—when the City zoning applications were originally filed—until September 12, 2013—when the applications were approved.

There is a clear and unambiguous limited waiver of immunity for valid claims under article I, section 17 of the Texas Constitution, the "takings clause," which provides that "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made . . . ." TEX. CONST. art. I, § 17(a). If the government appropriates property without paying adequate compensation, the owner may bring an inverse condemnation claim to recover the resulting damages. *Westgate, Ltd. v. State*, 843 S.W.2d 448, 452 (Tex. 1992). An inverse condemnation may occur when the government physically appropriates or invades the property, or when it unreasonably interferes with the landowner's right to use and enjoy the property, such as by restricting access or denying a permit for development. *Id.*

To plead a valid inverse condemnation claim and establish waiver of immunity under the takings clause, a plaintiff must allege that the governmental entity (1) intentionally performed certain acts in the exercise of its lawful authority (2) that resulted in taking, damaging, or destroying the plaintiff's property (3) for public use. *Gen. Servs. Comm'n v. Little-Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001); *City of San Antonio v. Alamo Aircraft Supply, Inc.*, 448 S.W.3d 507, 511 (Tex. App.—San Antonio 2014, no pet.). A governmental entity does not have immunity from a valid takings claim. *Little-Tex Insulation Co.*, 39 S.W.3d at 598. If, however,

the plaintiff fails to allege a valid takings claim, the governmental entity retains its immunity from suit. *Id.* "Whether particular facts are enough to constitute a taking is a question of law." *Id.*

In a takings case, "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 555 (Tex. 2004). It is not enough that the act causing the harm be intentional—there must also be knowledge to a substantial certainty that the harm will occur. *City of Dallas v. Jennings*, 142 S.W.3d 310, 313-14 (Tex. 2004). A taking cannot rest on the mere negligence of the government. *City of Tyler v. Likes*, 962 S.W.2d 489, 505 (Tex. 1997).

In *Jennings*, the Texas Supreme Court further explained the type of intent that must be shown in order to establish the first element of an inverse-condemnation claim. The court held it is not enough to show merely that the governmental entity intended to perform the act that resulted in the taking or the damage, because such a standard would hold the governmental entity to a stricter standard of liability than a private person engaging in the same acts. 142 S.W.3d at 313. Moreover, "[w]hen damage is merely the accidental result of the government's intentional act, there is no public benefit and the property cannot be said to have been taken or damaged for *public use*." *Id.* (quoting *Texas Highway Dep't v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 71 (1949)).

Starnes's amended petition alleged the following: (1) the City began a project in 2010 to update its municipal city limits map; (2) on June 14, 2012—before the mapping project was complete—the City told Starnes its property was partially inside and partially outside the City limits; (3) on March 29, 2012—again, before the mapping project was complete—the City's attorney told Starnes its property was entirely outside the City limits and, therefore, the City's zoning ordinances did not apply; (4) in 2013, the City completed its mapping project; and (5) on April 12, 2013, the City's attorney told Starnes that its property was partially inside and partially

outside the City limits and, therefore, the City's zoning approval was required. There is no dispute that the information intentionally provided by the City's attorney in March 2012 was incorrect. However, Starnes's amended petition alleges no facts that the information was the result of anything more than either a mistake or negligence on the City attorney's part. Starnes alleges no facts that the City knew to a substantial certainty that harm would occur as a result of the delay in its mapping project or the incorrect information it provided while the mapping project was on-going. *See Sheffield Dev. Co. v. City of Glenn Heights*, 140 S.W.3d 660, 680 (Tex. 2004) ("Nor does the record show how Sheffield's reasonable, investment-backed expectations excluded the possibility of a fifteen-month delay in a decision on its development plans. No other aspects of the moratorium [on development] make it more like a temporary taking—that is, an unreasonable prohibition in the use of property for a defined period—than a mere delay in decision."). As a result, "there is no public benefit and the property cannot be said to have been taken or damaged for *public use*." *Jennings*, 142 S.W.3d at 313. Because Starnes alleged no facts, in its amended petition, showing an intentional taking, the trial court erred in denying appellants' plea to the jurisdiction on Starnes's takings/inverse condemnation claim.

## C. Due Process and Equal Protection Claims

Starnes's amended petition alleged appellants deprived it of its interests and business expectations in the property, thereby violating its rights of due process under the law. No factual allegations were asserted to support this allegation. Presumably, Starnes is alleging the appellants violated its due process rights by giving it incorrect information regarding whether its property was located inside or outside the City limits and the delay of the approval of its zoning application because of the incorrect information.

To state a valid due process or due course of law claim, a plaintiff must first allege the existence of a protected right. *NCAA v. Yeo*, 171 S.W.3d 863, 867 (Tex. 2005). If the plaintiff has

a protected right, the court must determine what amount of process is due. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). To have a property interest in a governmental benefit, a person must have more than a unilateral expectation of that benefit. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Smith v. Travis Cty. Bail Bond Bd.*, 559 S.W.2d 693, 694 (Tex. Civ. App.—Austin 1977, no writ) (holding plaintiff had no property interest in expired license); *see also Shrieve v. Tex. Parks & Wildlife Dep't*, No. 03-04-00640-CV, 2005 WL 1034086, at *5-6 (Tex. App.—Austin May 5, 2005, no pet.) (mem. op.) (holding that Shrieve's expectation of a permit was not a protected property interest). Instead, the plaintiff must have a legitimate claim of entitlement to the benefit. *See Smith*, 559 S.W.2d at 694.

Starnes's zoning application merely sought a governmental benefit to which it was not already entitled. As such, Starnes only had an expectation of the governmental benefit, and its expectation is not a protected property right. *Smith*, 559 S.W.2d at 694; *Shrieve*, 2005 WL 1034086, at *5-6. This is not a case where a zoning application had been approved or a permit had been granted but was later taken away by the governmental entity without cause. *See, e.g., House of Tobacco, Inc. v. Calvert*, 394 S.W.2d 654, 657 (Tex. 1965) (holding that, although license to wholesale cigarettes was a privilege that did not have to be granted, once granted, it could not be taken away except for good cause; therefore, wholesaler was entitled to due process). Accordingly, Starnes has failed to demonstrate that sovereign immunity is waived for its due process and due course of law claims. Thus, the trial court erred in denying appellants' plea to the jurisdiction on Starnes's due process claim.

Under its equal protection claim, Starnes contended properties in the vicinity of its property have been put to the same or similar use, and Starnes was treated differently from those whose situations "are directly comparable in all material respects." Starnes argued that appellants'

preventing it from developing its property while allowing other properties in the vicinity to be put to the same or similar use constituted a denial of equal protection.

Similar to the federal constitution, "the equal protection clause of the state constitution directs governmental actors to treat all similarly situated persons alike." *City of Houston v. Johnson*, 353 S.W.3d 499, 503 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985) (discussing federal constitution's equal protection clause). To assert an equal protection claim, the deprived party must establish two elements: (1) that it was treated differently than other similarly-situated parties; and (2) it was treated differently without a reasonable basis. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 939 (Tex. 1998). The purpose of the equal protection clause is to secure persons against intentional and arbitrary discrimination. *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd); *Leonard v. Abbott*, 171 S.W.3d 451, 458 (Tex. App.—Austin 2005, pet. denied). However, a plaintiff must allege it is being treated differently from those whose situation is directly comparable in all material respects. *City of Dallas*, 331 S.W.3d at 787.

Other than a conclusory statement that it was treated differently from others similarly-situated, Starnes failed to allege, in its amended petition, any facts describing the parties similarly situated or the nature of the different treatment. Therefore, the trial court erred in denying appellants' plea to the jurisdiction on Starnes's equal protection claim.

## D. Texas Vested Property Rights Act

In its amended petition, Starnes alleged appellants' "acts, omissions and conduct" violated Texas Local Government Code chapter 245. Starnes's petition does not indicate which section of chapter 245 was allegedly violated, but we assume it refers to section 245.002, which provides as follows:

> (a)    Each regulatory agency shall consider the approval, disapproval, or conditional approval of an application for a permit solely on the basis of any orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements in effect at the time: (1) the original application for the permit is filed for review for any purpose, including review for administrative completeness; or (2) a plan for development of real property or plat application is filed with a regulatory agency.
>
> (a-1)    Rights to which a permit applicant is entitled under this chapter accrue on the filing of an original application or plan for development or plat application that gives the regulatory agency fair notice of the project and the nature of the permit sought.  An application or plan is considered filed on the date the applicant delivers the application or plan to the regulatory agency or deposits the application or plan with the United States Postal Service by certified mail addressed to the regulatory agency.  A certified mail receipt obtained by the applicant at the time of deposit is prima facie evidence of the date the application or plan was deposited with the United States Postal Service.

TEX. LOC. GOV'T CODE ANN. § 245.002(a), (a-1) (West 2005).

Generally, the right to develop property is subject to intervening regulatory changes. *Quick v. City of Austin*, 7 S.W.3d 109, 124 (Tex. 1998).  Section 245.002(a) creates a narrow exception to this rule by ensuring that if, after receiving a development application or plan, a regulatory agency changes its land-use regulations, the agency cannot enforce such regulatory change to the detriment of the applicant.  *See* TEX. LOC. GOV'T CODE § 245.002(a); *Shumaker Enters., Inc. v. City of Austin*, 325 S.W.3d 812, 814 (Tex. App.—Austin 2010, no pet.).  "Chapter 245 of the [Texas Local Government] Code recognizes a developer's vested rights and requires a regulatory agency to consider approval or disapproval of an application for a permit . . . based on regulations and ordinances in effect at the time the original application is filed." *Milestone Potranco Dev., Ltd. v. City of San Antonio*, 298 S.W.3d 242, 248 (Tex. App.—San Antonio 2009, pet. denied). Section 245.002(a-1) clarifies that an applicant's rights under section 254.002 accrue as of the filing "that gives the regulatory agency fair notice of the project and the nature of the permit sought." *Shumaker Enters.*, 325 S.W.3d at 815; *see* TEX. LOC. GOV'T CODE § 245.002(a-1).

Starnes did not assert any factual allegations, in its amended petition, to support its contention that section 245.002 was violated. Presumably, Starnes is alleging the appellants gave it incorrect information regarding the location of its property and thus delayed approval of its zoning application filed with the City. But Starnes does not point to any *change* in the City's existing "orders, regulations, ordinances, rules, expiration dates, or other properly adopted requirements" that occurred after Starnes filed its zoning application with the City in 2012. Nor did Starnes point to any regulatory change the City attempted to enforce after Starnes filed its 2012 zoning application.

"The effect of vested rights under Chapter 245 of the Local Government Code is to 'freeze' the land use regulations as they existed at the time the first permit application was filed through completion of the 'project;' in other words, a project with vested rights is not subject to intervening regulations or changes after the vesting date." *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 245 (Tex. App.—San Antonio 2012, pet. denied). Here, Starnes's application was approved by the City. Starnes does not argue the City's zoning laws in effect in March 2012 should be frozen and applied to it in September 2013. Thus, Starnes's allegations do not trigger application of chapter 245. *See Save Our Springs All. v. City of Austin*, 149 S.W.3d 674, 682 (Tex. App.—Austin 2004, no pet.) ("Stratus and the City are not seeking to apply pre-Ordinance development regulations to requested permits, a situation that would trigger the statutory requirements and exceptions of chapter 245.").

Also, in its petition, Starnes requested compensatory damages pursuant to Chapter 245, presumably for the delay in approving its application. Starnes did not request declaratory or injunctive relief. Chapter 245 "may be enforced only through mandamus or declaratory or injunctive relief." TEX. LOC. GOV'T CODE § 245.006.

For these reasons, we conclude the trial court erred in denying appellants' plea to the jurisdiction on Starnes' Local Government Code chapter 245 claim.

## RENDER OR REMAND TO ALLOW RE-PLEADING

For the reasons stated above, we hold the trial court erred in denying appellants' plea to the jurisdiction. Ordinarily, this holding would require us to dismiss Starnes's claims for lack of jurisdiction. However, appellate courts generally must remand a case to afford parties an opportunity to cure jurisdictional defects in their pleadings when the parties did not have that opportunity in the first instance because the jurisdictional issue arose for the first time on appeal.[2] *See Rusk*, 392 S.W.3d at 96-97; *Miranda*, 133 S.W.3d at 231. Here, however, the appellants did not raise their governmental immunity argument for the first time on appeal. Starnes had the opportunity to, and did in fact, amend its pleadings in the trial court after the appellants filed their special exceptions and a plea to the jurisdiction requesting dismissal of Starnes's suit. *See Miranda*, 133 S.W.3d at 231 (observing that parties had an opportunity to amend their pleadings and did so and were not entitled to another opportunity to replead).

The right to amend typically arises when the pleadings fail to allege enough jurisdictional facts to demonstrate the trial court's jurisdiction. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) ("A plaintiff has a right to amend her pleadings to attempt to cure pleading defects if she has not alleged enough jurisdictional facts."). "If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action." *Harris Cty. v. Sykes*, 136

---

[2] In its post-submission brief, Starnes asserted we should remand the cause to the trial court to allow it an opportunity to re-plead a second time.

S.W.3d 635, 639 (Tex. 2004). "Such a dismissal is with prejudice because a plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined." *Id.*

In *Sykes*, one of the issues before the Texas Supreme Court was whether "a dismissal [pursuant to a plea to the jurisdiction] is with prejudice because it fully and finally adjudicates whether the claims that were asserted, or that could have been asserted, come within the Texas Tort Claims Act's waiver of sovereign immunity." *Id.* at 637. Before dismissing the case, the trial court allowed Sykes to file an amended petition, after which the trial court made a final adjudication that the Legislature had not waived governmental immunity under the Texas Tort Claims Act with respect to any claim Sykes brought against Harris County. *Id.* at 639. Accordingly, the Texas Supreme Court determined Sykes "[was] foreclosed from relitigating whether the Texas Tort Claims Act waive[d] immunity in this case." *Id.* at 639-40. The supreme court modified the court of appeals' judgment to dismiss Sykes's claims against Harris County with prejudice. *Id.* at 640.

Here, as in *Sykes*, Starnes was given an opportunity to amend its original petition after the trial court sustained appellants' special exceptions. Despite amending its takings/inverse condemnation claim, Starnes alleged facts that showed only accident or negligence on the part of the appellants. Starnes did not allege any facts that the appellants possessed the knowledge required to establish an intentional taking. In its amended petition, Starnes did not allege any facts to support its due process claim. And, any claim based on the delay in providing zoning approval and water and sewage services was based on an expectation of a governmental benefit, and not a protected property right. Starnes's equal protection claim was equally deficient despite being afforded an opportunity to amend because Starnes failed to allege any facts supporting this claim other than its conclusory statement that it was treated differently from others similarly situated. Finally, Starnes requested only compensatory damages under the Texas Vested Property Rights

Act and, despite being afforded an opportunity to amend, it alleged no facts that would trigger application of the Act. We also note that, again despite being afforded an opportunity to amend, Starnes's amended petition alleged no wrongful acts on the part of the City of Floresville City Council; City of Floresville City Planning and Zoning Committee; and the Wilson County Appraisal District.

For these reasons, we conclude Starnes had a fair opportunity to allege facts tending to demonstrate the trial court had jurisdiction to hear the case. Therefore, we must conclude that if the case was remanded Starnes would not be able to show jurisdiction.

## CONCLUSION

We reverse the trial court's order denying appellants' plea to the jurisdiction and render judgment dismissing Starnes's claims against appellants with prejudice.

Sandee Bryan Marion, Chief Justice