

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00418-CV

The **CITY OF LYTLE**, Texas, Ruben Gonzalez, Miguel Aguirre, Ruben Gonzalez, Michael
Rodriguez, and Matthew Martinez,
Appellants

v.

## LYTLE MHC REAL ESTATE, LLC,
Appellee

From the 81st Judicial District Court, Atascosa County, Texas
Trial Court No. 24-12-0963-CVA
Honorable Jennifer Dillingham, Judge Presiding

Opinion by:　H. Todd McCray, Justice

Sitting:　　Lori I. Valenzuela, Justice
　　　　　Lori Massey Brissette, Justice
　　　　　H. Todd McCray, Justice

Delivered and Filed: April 29, 2026

REVERSED AND DISMISSED

　　Appellants, the City of Lytle, Texas, and certain city council members (the "City"), assert

the trial court erred when it denied its plea to the jurisdiction in a zoning dispute. We reverse the

trial court's order and dismiss the claims against the City.

## BACKGROUND

In January of 2022, Lytle MHC Real Estate, LLC ("LRE") contacted the City to discuss its plan to purchase the Harris Park Mobile Home Park and expand it into a manufactured home community (the "Project"). The land for LRE's project (the "Property")[1] is zoned B-2 (Secondary Business District). At that time, Section 46-303 of the City's zoning code permitted "mobile home parks" as a permitted use in B-2 zoned districts.

Both state law and the City's code currently define a "mobile home" as a structure constructed before June 15, 1976 ("Pre-1975 Mobile Homes") and defines "HUD-code manufactured homes" as having been constructed on or after that date ("Post-1976 Manufactured Homes"). The City maintains that Post-1976 Manufactured Homes have never been listed as permissible in B-2 zoned districts since those controlling state law definitions were enacted in 1983.

LRE asserts that, when it began the application process for the Project, the City's zoning code included a definition of "mobile home" that was broad enough to include Post-1976 Manufactured Homes and that the state's current definition of "manufactured home" is likewise broad enough to include Pre-1976 Mobile Homes. LRE believes this makes the terms interchangeable such that the City's zoning code permitting "mobile home parks" in B-2 zoned districts permits LRE to build a manufactured home development (including Post-1976 Manufactured Homes) on the Property.

---

[1] At the time, LRE was under contract to purchase the park and an adjoining 28.6 acres of land at 15215 Rodeo (Atascosa Property IDs 12810 and 12762). LRE's live petition states that it owns 16.9 acres of B-2 zoned property (Atascosa Property ID 12807, 12808, 12810) and is under contract to purchase 12.93 acres (Atascosa Property ID 12762). In its brief to this court, LRE states it owns 29.8 acres of land zoned B-2.

Accordingly, LRE began the application process for building a manufactured home community on the Property comprised of Post-1976 Manufactured Homes. In July 2023, the City approved LRE's preliminary plat for the Project.

While the Project was pending, the City considered amending Section 46-303 of its zoning code to remove "mobile home parks" from the list of permitted uses in B-2 zoned districts. In January 2024, LRE—believing the alleged interchangeability of the terms "mobile home" and "manufactured home" authorized it to build a Post-1976 Manufactured Home development on the Property—reached out to the City, expressing concern that the proposed amendment would affect its purported rights to develop the Project. The City responded that the zoning change was not intended to affect LRE's project. The City noted that the Property might have a vested right that would preclude effects from the zoning change, but the City did not opine on the nature of any vested right LRE may possess. In March 2024, the City amended Section 46-303, removing "mobile home park" from the list of permitted uses in B-2 zoned districts (the "2024 Amendment").

Around the same time, LRE submitted a request that the Property be rezoned to R-3, the exclusive location for manufactured home parks under the City's comprehensive zoning plan since 2008. The City denied LRE's rezoning request.

In July 2024, after reviewing LRE's proposed application for a final subdivision plat, the City informed LRE that the Property was in a B-2 zoned district which never allowed "manufactured home parks" as a permitted use and, as of the 2024 Amendment, no longer included "mobile home parks." The City acknowledged that LRE may have a vested right to develop a "mobile home park"—based on LRE's project submissions prior to the 2024 Amendment—but was adamant that any such right would be limited by the state's definition of "mobile home" which

excludes Post-1976 Manufactured Homes. Accordingly, the City explained that a final plat application seeking to include Post-1976 Manufactured Homes would be denied as noncompliant.

In spite of this warning, LRE did not revise its proposal; and in November 2024, the City denied the final plat application on the basis that manufactured home parks are not permitted in B-2 zoning districts. LRE then filed the underlying suit, asserting that the City's actions violated its rights. The City filed a plea to the jurisdiction—challenging LRE's standing to bring the claims and asserting governmental immunity—which the trial court denied. This interlocutory appeal follows.

### STANDARD OF REVIEW

"We review a trial court's ruling on a plea to the jurisdiction under a de novo standard." *County of Bexar v. Steward*, 139 S.W.3d 354, 357 (Tex. App.—San Antonio 2004, no pet.) (citing *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998)). "In applying a de novo standard of review to a standing determination, reviewing courts construe the pleadings in the plaintiff's favor, but we also consider relevant evidence offered by the parties." *Beasley,* 598 S.W.3d at 240.

A plea to the jurisdiction typically "challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). As the plaintiff, LRE carries the burden to demonstrate that the trial court has subject-matter jurisdiction over its claims. *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). To determine if they have met that burden, we consider the facts alleged in the petition and, "to the extent it is relevant to the jurisdictional issue, the evidence submitted by the parties." *Whitley*, 104 S.W.3d at 542.

"When the pleadings are challenged, we review whether the alleged facts, if true, affirmatively demonstrate jurisdiction; because we construe pleadings liberally in favor of the

pleader, we will grant a plea to the jurisdiction without an opportunity to replead only if the pleadings affirmatively negate jurisdiction." *Jones v. Turner*, 646 S.W.3d 319, 325 (Tex. 2022). But vague and conclusory statements within a pleading are insufficient to support jurisdiction; otherwise, the jurisdictional inquiry would become meaningless. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 660 (Tex. 2007); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004) (holding a plaintiff must allege "facts that affirmatively demonstrate the court's jurisdiction to hear the cause"); *Cnty. of El Paso v. Flores*, 677 S.W.3d 31, 43 (Tex. App.—El Paso 2023, pet. denied) ("Generally speaking, self-serving, speculative, and conclusory statements of fact or law are insufficient to raise a material issue of fact; thus, we look to additional evidence in the record to determine whether a fact issue exists.").

"However, a plea to the jurisdiction can also properly challenge the *existence* of those very jurisdictional facts." *Garcia*, 372 S.W.3d at 635. In either case, "the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject-matter jurisdiction of the court *and the merits of the case.*'" *Id*. (quoting *Miranda*, 133 S.W.3d at 227) (emphasis added). In those situations, the review of a plea to the jurisdiction mirrors that of a traditional summary judgment motion. *Garcia*, 372 S.W.3d at 635. "If the evidence creates a fact question regarding the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Miranda*, 133 S.W.3d at 227. "But if the relevant evidence is undisputed or the plaintiff fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea as a matter of law." *Garcia*, 372 S.W.3d at 635.

**ANALYSIS**

*Applicable Law on Governmental Immunity*

Subject matter jurisdiction is essential to a court's authority to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Governmental immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction. *Miranda*, 133 S.W.3d at 225-26; *see Jones*, 646 S.W.3d at 325 ("At the plea to the jurisdiction stage, governmental officials may challenge jurisdiction based solely on the pleadings or may challenge jurisdictional facts.").

"In a suit against a governmental unit, the plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Whitley*, 104 S.W.3d at 542. It is well established in Texas that bare allegations alone are not sufficient to invoke a waiver of sovereign or governmental immunity. *State v. Lueck*, 290 S.W.3d 876, 883–84 (Tex. 2009). Conclusory pleadings do not provide sufficient jurisdictional facts to determine if the trial court has jurisdiction. *City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010) (per curiam); *see Garcia*, 372 S.W.3d at 638 ("[S]ome inquiry is necessary because if . . . plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated."); *Lueck*, 290 S.W.3d at 884 ("Allowing a plaintiff's pleadings to stand on bare allegations, alone, without allowing the State to challenge plaintiff's compliance with the immunity statute, would practically eliminate the use of pleas to the jurisdiction[.]"). Accordingly, to demonstrate subject matter jurisdiction, LRE must allege facts sufficient to establish a waiver of governmental immunity.

**I.      The City is Immune from Claims under Texas Local Government Code § 245.**

In two of its claims, LRE seeks declaratory relief pursuant to section 245.006 of the Texas Local Government Code, which waives governmental immunity solely for lawsuits seeking to enforce Chapter 245. TEX. LOC. GOV'T CODE ANN. § 245.002. We conclude that both of these claims fail because LRE's allegations do not contain jurisdictional facts establishing that section 245 is applicable to the underlying facts.

In the first claim, LRE seeks a declaration that its vested rights in the Property exempt it from the 2024 Amendment "which would purport to prohibit the placement of mobile homes manufactured subsequent to 1976 on the [Subject] Property as part of a Mobile Home Park." In the second, LRE seeks a declaration that it has a vested right to develop HUD-code manufactured homes on the Property and therefore the City's council members committed *ultra vires* acts when they failed to perform their ministerial act of approving LRE's final plat application.

"Section 245.002 establishes that municipal regulatory agencies must consider a permit application under the terms of the ordinances that were in effect at the time a permit, development plan, or plat application was filed." *Diamond Envtl. Mgmt., L.P. v. City of San Antonio*, No. 04-21-00058-CV, 2022 WL 4359085, at *7 (Tex. App.—San Antonio Sept. 21, 2022, pet. denied) (mem. op.). "The effect of vested rights under chapter 245 of the Local Government Code is to "freeze" the land use regulations as they existed at the time the first permit application was filed through completion of the "project;" in other words, a project with vested rights is not subject to intervening regulations or changes after the vesting date." *City of San Antonio v. Rogers Shavano Ranch, Ltd.*, 383 S.W.3d 234, 245–46 (Tex. App.—San Antonio 2012, pet. denied).

Under section 245.006, "[a] political subdivision's immunity from suit is waived in regard to an action under this chapter." TEX. LOC. GOV'T CODE ANN. § 245.006(b). But for the waiver to

apply, LRE must present allegations that the City failed to consider the approval of LRE's final plat application solely on the basis of the zoning ordinances in effect at the time LRE began the application process for the project. Nothing in LRE's live pleading suggests that the City considered LRE's final plat application based on any requirements that took effect after LRE filed its original application. LRE alleges the only reason given by the City Council in explaining its denial of the final plat application is that manufactured home parks are not permitted in zone B-2.

LRE attempts to bolster its position by asserting the 2024 Amendment "purported to eliminate mobile homes, manufactured housing and/or HUD manufactured homes as permissible uses in the B-2 zoning district."[2] But this attempt is futile because LRE never asserts the City Council's denial of its final plat application was based on the 2024 Amendment, or any other change to the City's zoning ordinances enacted after LRE began its submission process.

LRE's superficial references to Section 245 are not enough to establish the City's consent to be sued. *See Garcia*, 372 S.W.3d at 637. To bring a claim under Section 245.006, LRE is required to allege the City denied LRE's final plat application on the basis of zoning ordinances effectuated after LRE began the application process for the project which violated its vested rights. *Id*.; *Lueck*, 290 S.W.3d at 881 ("Lueck must actually allege a violation of the Act for there to be a waiver from suit."). It has not done so.[3]

Therefore, we conclude immunity has not been waived, and the trial court does not have jurisdiction over these two causes of action. *See City of Floresville v. Starnes Inv. Group, LLC*,

---

[2] As discussed below, we disagree that the 2024 Amendment purported to eliminate, or eliminated, manufactured housing and/or HUD manufactured homes as permissible uses in the B-2 zoning district, because we conclude they were never permitted uses in that zoning district.

[3] Accordingly, LRE has also failed to allege how the city council's denial of the final plat application was an *ultra vires* act.

502 S.W.3d 859, 869 (Tex. App.—San Antonio 2016, no pet.) (concluding it was error to deny plea where factual allegations did not show section 245 was violated).

**II.      The City is Immune from LRE's Claim under Texas Local Government Code § 212.010(e)**

LRE also seeks relief pursuant to Texas Local Government Code section 212, in the form of a writ of mandamus compelling the City and city council members to approve its plat application. As with LRE's claims under Section 245, we conclude LRE has failed to assert jurisdictional facts to establish a violation under Section 212.010 such that its waiver of immunity would apply. Section 212.010(e) states that:

> If a municipal authority responsible for approving plats fails or refuses to approve a plat that meets the requirements of this subchapter, the owner of the tract that is the subject of the plat may bring an action in a district court in a county in which the tract is located for a writ of mandamus to compel the municipal authority to approve the plat by issuing to the owner applicable approval documentation.

TEX. LOC. GOV'T CODE ANN. § 212.010(e).

While this provision provides a waiver of governmental immunity, by its own terms, that waiver is still limited to circumstances in which the plat at issue qualifies for approval. This approach maintains the purpose of governmental immunity, protecting "the State's political subdivisions from suit and liability." *Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022).

Writs of mandamus can issue against a public official to compel the official to perform a ministerial act. "But as a general rule, a writ of mandamus will not issue to compel a public official to perform an act which involves an exercise of discretion." *Id*. at 333. "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 793 (Tex. 1991). Therefore, a successful petition for writ of mandamus seeking to compel action

by a public official must be based on an *ultra vires* rationale. "To fall within this *ultra vires* exception, a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act."[11] *Schroeder*, 646 S.W.3d at 332. "If the challenged actions were not truly outside the officer's authority or in conflict with the law then the plaintiff has not stated a valid *ultra vires* claim and governmental immunity will bar the suit. *Id*. at 332-333.

In the present case, LRE claims that it is entitled to mandamus relief because its "plat meets all applicable requirements for approval." These conclusory pleadings do not provide sufficient jurisdictional facts to determine whether the trial court had jurisdiction. *See Miranda*, 133 S.W.3d at 226 (holding a plaintiff must allege "facts that affirmatively demonstrate the court's jurisdiction to hear the cause"); *Lueck*, 290 S.W.3d at 884 (holding that a plaintiff's pleadings cannot stand on mere reference to statute and bare allegations without giving facts sufficient to establish jurisdiction).

Even if we were to look beyond these conclusory pleadings, LRE's underlying claim of a vested right is refuted by the undisputed jurisdictional facts alleged by LRE and the City. Thus, the jurisdictional evidence does not establish a violation of section 212.010.

### A. LRE's Claim to Vested Property Rights

Resolution of LRE's claim of vested rights depends on how the City's zoning code defines and uses the terms "mobile home" and "manufactured home." Two provisions are central to that inquiry: Section 46-1, which includes the applicable definitions and Section 46-303, which sets out the permitted uses. LRE asserts that, when it began the application process for the project, Section 46-1 of the City's zoning code provided a definition of "mobile home," that was broad enough to include "Post-1976 Manufactured Homes."

> A "mobile home" is a movable or portable dwelling constructed to be towed by a motor vehicle on its own chassis over state roads and highways under special permit, connected to utilities, and designed without a permanent foundation, for year-round living[.][4]

LRE also claims that the state's definition of "manufactured home" is broad enough to include Pre-1975 Mobile Homes. The Texas Manufactured Housing Standards Act (TMHSA) provides that "'[m]anufactured housing' or 'manufactured home' means a HUD-code manufactured home *or a mobile home and collectively means and refers to both*."[5] LRE asserts that these broad definitions make the terms "mobile home" and "manufactured home" interchangeable and that because zoning code Section 46-303 permitted "mobile home parks" in B-2 zoned districts,[6] Post-1976 Manufactured Homes were permitted in B-2 zoned districts prior to the 2024 Amendment. LRE further argues that, because the application process for the project began prior to the 2024 Amendment, it has a vested right to build Post-1976 Manufactured Homes on the Property.

### B. *Revised TMHSA Definitions Undermine LRE's Approach*

The City rejects LRE's interpretation of the prior version of Section 46-303, asserting that the definition of "mobile home" in Section 46-1 of the City's zoning code (adopted as part of the City's comprehensive zoning plan in 1978 following the inclusion of this definition in the Texas Mobile Home Standards Act enacted in 1975),[7] was preempted by newer definitions in the TMHSA. The City maintains that Post-1976 Manufactured Homes have never been listed as permissible in B-2 zoned districts since those controlling state law definitions were enacted in 1983. We agree. *See Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 487 (Tex. 2012)

---

[4] LYTLE, TEX., CODE § 46-1.
[5] *See* Acts 1985, 69th Leg., p. 500, ch. 83, Art. 5221f, TEX. REV. CIV. STAT. ANN. (1985) (emphasis added).
[6] LYTLE, TEX., CODE § 46-303 (1978).
[7] Acts 1975, 64th Leg., p. 2036, ch. 674; Art. 5221f, TEX. REV. CIV. STAT. ANN. (1975).

("[C]ourts are not required to accept as true parts of . . . pleadings that are actually legal, rather than factual, allegations.").

In 1983, the state revised the definition of "mobile home" to specifically refer to structures "constructed before June 15, 1976," and added the term "HUD-code manufactured home" to the TMHSA to refer to "a structure, constructed on or after June 15, 1976[.]"[8] These new state law definitions immediately preempted the prior definition of "mobile home" in Section 46-1 of the City's zoning code. *City of San Antonio v. Greater San Antonio Builders Ass'n*, 419 S.W.3d 597, 601 (Tex. App.—San Antonio 2013, pet. denied) ("An ordinance that attempts to regulate a subject matter preempted by a state statute is unenforceable to the extent it conflicts with a state statute . . . . [I]f it is not possible to reconcile the ordinance and the state statute, the state statute trumps the ordinance." (citing *Dallas Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–92 (Tex.1993)).

Further, the TMHSA was amended again in 1987 to emphasize that these terms are distinct and binding as a matter of law.

> The definitions of "mobile home," "HUD-code manufactured home," and "manufactured housing" set forth in Section 3 of this article are binding on all persons and agencies in this state as matter of law including local political subdivisions and home-rule cities. ***A mobile home is not a HUD-code manufactured home and a HUD-code manufactured home is not a mobile home for any purpose under the laws of this state***.[9]

Thus, assuming *arguendo* these terms had at one point been interchangeable, the new distinction based on the date of construction, followed by clear statutory language reinforcing the binding nature of this distinction, precludes such an interpretation.

---

[8] These definitions, demonstrating the distinctions based on manufactured date, were added to Section 24-1 of the City's code in 1989, and are included in LRE's live petition.
[9] Acts 1987, 70th Leg., ch. 1134, § 13, Art. 5221f, TEX. REV. CIV. STAT. ANN. (1987).

This revised meaning of "mobile home" therefore restricted the meaning of "mobile home park" in Section 46-1 to exclude Post-1976 Manufactured Homes. *See* LYTLE, TEX., CODE § 46-1 ("Trailer camp, trailer coach park or *mobile home park* means a lot or tract of land . . . for trailers or *mobile homes*[.]") (emphasis added). Section 46-303's authorization of "mobile home parks" in B-2 zoned districts, was similarly restricted by these revised definitions of "mobile home" and "mobile home park." Accordingly, while "mobile home parks" were permitted in B-2 zoned districts under the City's zoning code, by 1983 that term was limited by TMHSA definitions to exclude Post-1976 Manufactured Homes.[10]

Finally, in 2008, the City created a new "Manufactured Home District" under R-3 of the City's zoning plan. Specifically, the zoning code mandated that "[m]anufactured home parks *shall not be located outside of R-3 Manufactured Home Districts*."[11] Accordingly, this zoning change would also supersede any permission to develop manufactured housing in B-2 zoned districts—had such permission ever existed. *See* TEX. GOV'T CODE ANN. § 311.025(a) ("[I]f statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails."); *Jackson v. State Office of Admin. Hearings*, 351 S.W.3d 290, 297 (Tex. 2011) ("[A]s a matter of statutory construction, if statutes are irreconcilable, the statute latest in date of enactment prevails."); *see also City of Dallas v. Employees' Ret. Fund of City of Dallas*, 687 S.W.3d 55, 61 (Tex. 2024) (quoting *Jackson* and stating "[t]his principle is, in essence, a choice-of-law rule that requires courts to apply a later-enacted provision that clearly contradicts a prior one—which is another way to describe an implied repeal.").

---

[10] Furthermore, though the City has since adopted the TMHSA's definition of "manufactured housing" and "manufactured home" as "a HUD-manufactured home or a mobile home" into Section 24-1 of the City code, LRE has failed to assert or provide jurisdictional evidence that either term was ever added by the City to Section 46-303—such that Post-1976 Manufactured Homes would have been listed as a permissible use for B-2 zoned districts. Nor could it be included under the TMHSA's present definition of the term which encompasses Post-1976 Manufactured Homes, which have always been excluded from B-2 zoned districts by Section 46-303.

[11] LYTLE, TEX., CODE § 46-256 (emphasis added).

To bring a claim under Section 212.010, LRE is required to allege jurisdictional facts demonstrating the City failed or refused "to approve a plat that meets the requirements of this subchapter." TEX. LOC. GOV'T CODE ANN. § 212.010(e); *see also Lueck*, 290 S.W.3d at 881; *Miranda*, 133 S.W.3d at 226. But LRE has not presented jurisdictional facts or evidence to support its assertion that Post-1976 Manufactured Homes were a permitted use under the B-2 zoning classification when it began the application process for the project or when it submitted its final plat application.

Because the Property is in a B-2 zoned district, the inclusion of Post-1976 Manufactured Homes in the final plat application did not comply with the City's comprehensive zoning plan. *See City of Round Rock*, 687 S.W.2d at 303 ("In deciding whether to approve or disapprove a proposed plat the planning commission must interpret and construe the city plan, applicable ordinances and state statutes to determine whether the proposed plat complies with these laws."); *Lueck*, 290 S.W.3d at 883 (examining plaintiff's allegations to determine if statutory requirements for sovereign immunity have been met even if the examination implicates the merits of the underlying suit). Accordingly, LRE has not alleged jurisdictional facts to support the application of section 212.010. We conclude immunity has not been waived, and the trial court does not have jurisdiction over this cause of action.

### III. The City is Immune from LRE's UDJA Claim that the 2024 Amendment is Invalid

In its next claim, LRE seeks a declaration that the revision of Section 46-303 by the 2024 Amendment is "void and/or invalid as being arbitrary, capricious and not otherwise related to the health, safety, morals or welfare of the community." The Uniform Declaratory Judgments Act ("UDJA") does not contain a general waiver of sovereign immunity; instead, it provides "only a limited waiver for challenges to the validity of an ordinance or statute." *Town of Shady Shores v.*

*Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). We conclude that LRE's conclusory pleading does not provide sufficient jurisdictional facts to establish the trial court's jurisdiction.

"A zoning ordinance . . . is presumed to be valid and the burden is on the one seeking to prevent its enforcement, whether generally or as to particular property, to prove that the ordinance is arbitrary or unreasonable in that it bears no substantial relationship to the health, safety, morals or general welfare of the community." *City of Pharr v. Tippitt*, 616 S.W.2d 173, 175–76 (Tex. 1981). But LRE has not articulated any jurisdictional facts or allegations to explain how the 2024 Amendment is invalid. In its entirety, LRE's claim states:

> Plaintiff further seeks a declaratory judgment from this court that to the extent the amendment to the zoning ordinance of the City of Lytle, Texas which purports to prohibit the placement of mobile home or manufactured homes made or constructed after 1976 is arbitrary and capricious and not being related to the health, safety, morals or general welfare of the community, and is thus void and invalid.

LRE's allegations fail to explain how the 2024 Amendment bears no substantial relationship to the public health, safety, morals or general welfare, such that it is arbitrary—either generally or as to a particular property.

In *City of Elsa v. Gonzalez*, the Supreme Court of Texas found plaintiff's conclusory allegations failed to establish that the city's immunity from suit was waived under the Whistleblower Act. 325 S.W.3d 622, 625 (Tex. 2010). Under the act, Gonzalez was required to allege "sufficient facts to establish that he was a public employee and he in good faith reported a violation of law by the City or another public employee to an appropriate law enforcement authority." *Id*. In that case the plaintiff alleged that he was serving as city manager when he:

> in good faith reported to appropriate law enforcement authorities including the Elsa City Commission, Hidalgo County Judge, [HCUCP], Texas Municipal League, an Assistant District Attorney, and the District Attorney activities that he in good faith believed were violations of the laws, ordinances, and other rules by the governmental entity and its officials. [Gonzalez] reported illegal acts of the mayor,

- 15 -

and other acts of the City Council that were in violation of the Texas Open Meetings Act.

*Id*. The Court concluded "[t]hese conclusory pleadings do not provide sufficient jurisdictional facts to determine if the trial court had jurisdiction." *Id*.

Because LRE's conclusory pleading fails to present any explanation regarding how the 2024 Amendment is arbitrary or capricious (to LRE or in general), LRE has failed to affirmatively demonstrate the trial court has jurisdiction over its UDJA claim. *See Garcia*, 372 S.W.3d at 638 ("[If] plaintiffs were allowed to stand on talismanic allegations alone, the constraining power of pleas to the jurisdiction would practically be eliminated."); *Flynn*, 228 S.W.3d at 660 (noting conclusory allegations are not sufficient to establish the elements of a cause of action).

## IV. The City is Immune from LRE's Equal Protection Claim

In addition to its statutory cause of action, LRE also raises constitutional claims. First, LRE asserts the City's "purported elimination" of Post-1976 Manufactured Homes from the B-2 zoning district while continuing to allow Pre-1976 Mobile Homes, is treating similarly situated persons unequally in violation of LRE's equal protection right. Again, we conclude that LRE's conclusory pleading does not provide sufficient jurisdictional facts to establish the trial court's jurisdiction over this claim. *See Andrade v. NAACP of Austin*, 345 S.W.3d 1, 6 (Tex. 2011) (noting that if the plaintiff fails to plead a viable claim, a governmental defendant remains immune from a suit for alleged equal protection violations).

The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). "To assert an equal protection claim, the deprived party must establish two elements: (1) that it was treated differently than other similarly-situated parties; and (2) it was treated differently without a reasonable basis." *Starnes Inv. Group, LLC*, 502 S.W.3d at 868. It is

critical that the plaintiff allege it is being treated differently from those whose situation is directly comparable in all material respects. *See id.*; *City of Dallas v. Jones*, 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd).

While LRE conclusorily asserts it was treated differently from others similarly-situated, it fails to describe the similarly situated parties *and* fails to allege how it is being treated differently from them by the City. Therefore, the trial court erred in denying the City's plea to the jurisdiction on LRE's equal protection claim. *See Starnes Inv. Group, LLC*, 502 S.W.3d at 868 (concluding it was error to deny plea when plaintiff failed to allege "any facts describing the parties similarly situated or the nature of the different treatment").

## V.      The City is Immune from LRE's Substantive Due Process Claim

LRE also asserts its "right to substantive due process" has been violated by the acts of the City as alleged in its live petition. However, to state a valid due process claim, a plaintiff must first allege the existence of a vested right or property interest that was affected by the complained-of actions. *See id.*, at 867; *City of Amarillo v. Hancock*, 239 S.W.2d 788, 791 (Tex. 1951) ("[I]n order to sustain the jurisdiction of the district court here, plaintiff must bring himself within the protection of the due process clause. To do that, *the right affected adversely here by the action of this administrative body must be a vested property right.*") (emphasis added). To have a constitutionally protected property interest, a person must have a "legitimate claim of entitlement" rather than a mere "unilateral expectation." *Honors Acad., Inc. v. Tex. Educ. Agency*, 555 S.W.3d 54, 61 (Tex. 2018) (citing *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972)). Texas law similarly states that a "vested right" is "something more than a mere expectancy based upon an anticipated continuance of an existing law." *Honors Acad.*, 555 S.W.3d at 61.

We have already concluded the jurisdictional facts establish that LRE does not have a vested right to build a manufactured home development on the Property. However, even assuming LRE did possess a vested property right, it still would not qualify as a constitutionally protected right. *See City of Univ. Park v. Benners*, 485 S.W.2d 773, 778 (Tex. 1972) ("[P]roperty owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made. Otherwise, a lawful exercise of the police power by the governing body of the City would be precluded.") (collecting cases); *City of Grapevine v. Muns*, 651 S.W.3d 317, 346 (Tex. App.—Fort Worth 2021, no pet.) ("[A]lthough the Homeowners have a vested right in their properties, they do not have a vested right under the Zoning Ordinance[.]").

We therefore conclude that LRE's due process claim is facially invalid because LRE has not alleged the existence of a constitutionally protected right. Therefore, the trial court erred in denying the City's plea to the jurisdiction on LRE's due process claim. *City of Dallas v. Jones,* 331 S.W.3d 781, 787 (Tex. App.—Dallas 2010, pet. dism'd). ("[I]f the plaintiff's constitutional claim is facially invalid, the trial court must grant a plea to the jurisdiction asserting governmental immunity.").

## VI.    The City is Immune from LRE's Inverse Condemnation and/or Regulatory Taking Claim

Finally, LRE presents an alternative takings claim should the trial court find the City's zoning restrictions are valid. While we express no opinion on the merits of the case, we assume *arguendo* that the zoning restrictions are valid for our jurisdictional analysis. In this claim, LRE alleges:

> [T]he restrictions imposed by the City of Lytle upon Plaintiff's property are so onerous that the effect of those restrictions effects a direct appropriation or ouster and a deprivation of the Plaintiff's distinct investment-backed expectations. The City of Lytle is purporting to take the Plaintiff's Property for a public use in exchange for a discretionary benefit that has little or no relationship to the Property.

This conclusory pleading does not allege sufficient jurisdictional facts to present an inverse condemnation or takings claim.

"The elements of an inverse condemnation or "takings" claim are that (1) an entity with eminent domain power intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to (3) public use." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 26 (Tex. 2024). "An intentional act satisfying the first element requires evidence that the entity either (a) intended to damage the property or (b) knew that its conduct was causing identifiable harm or that specific property damage was substantially certain to result from the conduct." *Id*. at 26 (cleaned up). "In a regulatory taking, it is passage of the ordinance that injures a property's value or usefulness." *Lowenberg v. City of Dallas*, 168 S.W.3d 800, 802 (Tex. 2005).

While LRE does not articulate the basis of its claim, a review of its prior allegations indicates that LRE's takings claim is based on the City's zoning laws (referred to in the claim as "restrictions") which preclude the development of a manufactured home park on the Property because it is in a B-2 zoned district. We conclude the trial court lacks jurisdiction over this claim because any purported injury occurred before LRE acquired the Property.

As previously discussed, while "mobile home parks" were originally permitted in B-2 zoned districts under the City's zoning code, by 1983 that term excluded Post-1976 Manufactured Homes. And, in 2008, the City established that "[m]anufactured home parks shall not be located outside of R-3 Manufactured Home Districts."[12] Accordingly, even if Post-1976 Manufactured Homes had once been a permitted use under the B-2 zoning classification, a "manufactured home park" could not be developed anywhere other than an R-3 zoned district.[13]

---

[12] LYTLE, TEX., CODE § 46-256.

[13] While the 2024 Amendment was enacted after LRE acquired the Property, the jurisdictional facts and evidence show that it caused no injury given that Post-1976 Manufactured Homes and "manufactured home park" were already

Therefore, the jurisdictional facts and evidence demonstrate that neither Post-1976 Manufactured Homes, nor "manufactured home parks," were permitted under the B-2 zoning classification when LRE purchased the Property. Accordingly, even if a taking occurred, the purported injury to the Property occurred before LRE acquired it.[14]

Because there is no injury to LRE, we conclude its takings claim is invalid and the City's immunity has not been waived. *See Starnes Inv. Group, LLC*, 502 S.W.3d at 866 ("A governmental entity does not have immunity from a valid takings claim. If, however, the plaintiff fails to allege a valid takings claim, the governmental entity retains its immunity from suit."). Therefore, the trial court erred in denying the City's plea to the jurisdiction on LRE's takings claim. *See Self*, 690 S.W.3d at 26 ("If a defendant files a plea to the jurisdiction showing that the plaintiff has not alleged these elements and cannot amend its petition to do so, or if the defendant negates an element in an evidentiary plea, the takings claim must be dismissed." ).

## VII.    LRE's TMHSA Violations Claim is Moot

Although we have concluded that governmental immunity bars LRE's first six causes of action, we do not analyze LRE's final claim with respect to immunity because we find it to be moot. Through this claim, LRE seeks a declaration that the prior version of Section 46-303 (later revised by the 2024 Amendment), violated certain provisions of the TMHSA by failing to provide a separate category for Post-1976 Manufactured Homes.[15]

---

precluded and because the 2024 Amendment only removed "mobile home parks" from the list of permitted uses in B-2 zoned districts.

[14] For this reason, even if immunity was waived, LRE would not have standing to bring this claim. *See Electro Sales & Servs., Inc. v. City of Terrell Hills*, No. 04-17-00077-CV, 2018 WL 1309709, at *3 (Tex. App.—San Antonio Mar. 14, 2018, pet. denied) ("The right to sue for an injury to real property is a personal right belonging to the person owning the property at the time of the injury.") (cleaned up); *Ceramic Tile Intern., Inc. v. Balusek*, 137 S.W.3d 722, 724 (Tex. App.—San Antonio 2004, no pet.) ("A subsequent purchaser cannot recover for an injury committed before his purchase absent an express provision in the deed, or . . . an assignment, granting him that power.").

[15] While the first sentence of this cause of action appears to state that LRE is seeking a declaration that the 2024 Amendment brought Section 46-303 into conflict with the TMHSA, the remainder of the claim asserts LRE is challenging the version of Section 46-303 prior to the 2024 Amendment. LRE's prayer reinforces this conclusion as

This claim is moot because it challenges a version of Section 46-303 that is no longer in effect. *See City of Richardson v. Gordon*, 316 S.W.3d 758, 762 (Tex. App.—Dallas 2010, no pet.) ("We conclude that Gordon's claim for declaratory relief is moot. Because the city charter provision about which Gordon complains has been amended, no future violations of that provision can occur."); *Trulock v. City of Duncanville*, 277 S.W.3d 920, 925–28 (Tex. App.—Dallas 2009, no pet.) (finding claim for declaration that city ordinance was unconstitutional rendered moot when city modified ordinance and deleted challenged provisions); *see also Town of Shady Shores*, 590 S.W.3d at 552 (stating the UDJA does not contain a general waiver of sovereign immunity; instead, it provides "only a limited waiver for challenges to the validity of an ordinance or statute"). LRE has failed to provide any authority for the premise that the UDJA may be used to challenge the validity of a *prior version* of an ordinance. Accordingly, we conclude this cause of action is moot and, therefore, the trial court does not have jurisdiction over this cause of action.

**REMAND OR RENDER**

Because LRE has failed to demonstrate a waiver of governmental immunity, the trial court lacked subject matter jurisdiction over LRE's claims. We must therefore determine whether to dismiss those claims with prejudice or remand the case to the trial court to give LRE an opportunity to replead. When repleading cannot cure the jurisdictional defects, we need not allow the plaintiff to replead. *See Tex. Dep't of Ins., Div. of Workers' Comp. v. Brumfield*, No. 04-15-00473-CV, 2016 WL 2936380, at *5–6 (Tex. App.—San Antonio May 18, 2016, no pet.).

First, we note that LRE's live pleading was an amended petition filed after the City filed a plea to the jurisdiction, an amended plea to the jurisdiction, and a no evidence motion for summary

---

it claims LRE seeks "[a] determination that the City of Lytle's zoning ordinance *as it existed prior to the 2024 amendment*, failed to comply with the Texas Manufactured Housing Act provision regarding a separate definition of HUD-Code Manufactured Homes."

judgment. Despite that, LRE's claims remain conclusory in nature and are based, primarily, on a failure to acknowledge that the zoning ordinance language it relies on has been preempted.

Here the jurisdictional facts and evidence establish that LRE does not have a vested right to build a manufactured home development on the Property because the zoning changes excluding Post-1976 Manufactured Homes from B-2 zoned districts occurred before LRE acquired the Property and, therefore, LRE's final plat application did not meet all applicable requirements for approval as a manufactured home development is not permitted in B-2 zoned districts.

Accordingly, we conclude that repleading would not cure LRE's inability to show a waiver of the City's governmental immunity. *See Miranda*, 133 S.W.3d at 227 ("If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend."). Accordingly, we will render the judgment the trial court should have. See *id*. at 228.

## CONCLUSION

Because LRE's live petition fails to allege sufficient jurisdictional facts to demonstrate the trial court has jurisdiction to hear its claims, we conclude the City's plea to the jurisdiction should have been granted. Therefore, we reverse the trial court's order denying the plea to the jurisdiction and dismiss LRE's claims.

H. Todd McCray, Justice